MILLER LEVEE DISTRICT NUMBER 2 v. DALE.

Opinion delivered February 14, 1927.

1. PARTIES—REAL PARTY IN INTEREST.—In an action against a levee district for damages for land taken, in which the district contended that plaintiff was not the owner of the land and therefore not the real party in interest, evidence *held* to show that the plaintiff was the real party in interest.

2. EMINENT DOMAIN—DEDUCTION OF BENEFITS TO LAND TAKEN.—The owner of land across which a levee was constructed is entitled to the damages sustained, without deductions of benefits therefrom, since the owner pays for the benefits like any other landowner.

3. LEVEES—PERCENTAGE ASSESSMENT OF BENEFITS.—Though the benefits to lands in a levee district are arrived at by multiplying the valuation of the lands on the county tax books by 6 per cent., the assessment is on a basis of benefits, and is not an *ad valorem* tax.

Appeal from Miller Circuit Court; *James H. McCollum,* Judge; affirmed.

*Henry Moore, Jr.,* for appellant.

*Shaver, Shaver & Williams,* for appellee.

MEHAFFY, J.    The appellee brought suit against the appellant in the circuit court of Miller County, alleging that, in 1924, on account of the caving of the banks of the Red River, it became necessary for the levee district to build a new line of levee over and across plaintiff's land and that the defendant built a new levee across plaintiff's land, occupying about eight acres, and that appellant refused to pay appellee damages, and asked for judgment for the value of the land taken in the sum of $827. Defendant filed a motion to dismiss, alleging that the suit was not brought in the name of the real party in interest, and that J. R. Dale, husband of May B. Dale, was the owner of the land at the time of the taking.    Defendant also filed an answer, denying that the land was the property of the plaintiff at the time the levee was built.    It alleged that the property belonged to J. R. Dale, and that J. R. Dale was a member of the board of directors of the district, and, as such, he knew of and acquiesced in the taking of the land, and was estopped from claiming damages.

Appellant admitted taking about seven acres of land belonging to J. R. Dale, alleging that the land taken was only rough, bermuda land, fit only for pasture, and that the value for that purpose had been increased by the building of the levee, and claimed that it was entitled to offset any damages by the benefits that were special and peculiar to the remainder of the land owned by plaintiff, or by her husband, and alleged that such benefits to the land exceeded the damages to the land occupied by the new levee.

The testimony showed that J. R. Dale deeded to his wife, May B. Dale, about 3,000 acres of land, including that taken by the levee, the date of said deed being May 31, 1923, recorded January 15, 1925, consideration being $50,000.    J. R. Dale testified, as the agent of appellee, that he was down at the river while the levee was being built; that the land had bermuda and bushes on it, that he had authorized it to be cleared, and he was to pay $20 an

acre for clearing same; that he was a member of the levee board, and that one of the members, Judge Friedell, said that the land would never be paid for until they were forced to pay for same, advising him that he would have to bring suit; that he had been a member of the levee board since its organization, and knew that the levee was to be set back; did not know if he claimed that it was May B. Dale's land before the suit was brought; did not know when the deed was recorded; there was never any special statement made to any member of the board before the deed was recorded; she had a deed to it, and he was her agent; did not remember when the deed was delivered. All of his acts since the deed was delivered and recorded have been as agent for May B. Dale, and they were prior to that time, as she had a mortgage on it all the time for $100,000.

An engineer testified that 7.2 acres were taken by the levee. Work was completed the latter part of May, 1924. It was also shown that Dr. Dale paid another witness $10 apiece for driving two pumps and $7.50 for repairing a flue on a house that was moved by the levee board.

Witness Dean testified that he was familiar with the value of the land in the neighborhood, and that the land through which the levee was built was worth between $75 and $100 per acre. Part of the land was grown up in bushes, part had washed out, and there were ridges of sand and holes made by previous overflows. He said he did not value the particular land taken at anything by itself, but, in connection with the other land, he would average it, and that he had offered Dr. Dale $50 per acre. It was also testified that the loan value on the land would be 50 per cent. of $100 per acre, and that this land was covered with pecan sprouts, and fit only for pasture.

There was considerable testimony about the value of the land taken, and about the land being covered with bermuda grass and bushes. Testimony also tended to show that the land occupied by the levee could still be

used for a pasture, and that the levee board only took an easement, and that, if oil was found, it would belong to the owner.

Appellant offered to prove special benefits that would be received by plaintiff to the land, but was not permitted to make such proof. One witness testified that the land was rough land, covered with bushes, worth about $25 or $30 an acre; that it was worth nothing except for pasturage, and is worth more now than before the levee was built.

It is contended by appellant that appellee was not the owner of the land, and, for that reason, had no right to maintain this suit. We think the proof is ample to show that the appellee was the real party in interest and therefore had a right to maintain this suit.

It is also contended by the appellant that the measure of damages should be the difference in the value of the land of plaintiff before being occupied by the levee and the present value of such land, and contended that, because of the peculiar benefits accruing to plaintiff's land, these benefits should have been taken into consideration in arriving at the damage sustained by plaintiff. It is contended that this is the correct rule, because appellant says that no benefits have been levied against the land in the district, but that all the lands in the district are placed on the taxbooks as they appear on the real estate books of the county, and that the amount of levee taxes is arrived at by multiplying such value by 6 per cent., and that therefore the levee taxes are collected on an *ad valorem* rather than a benefit basis, and that it is entirely different from the system of assessment ordinarily used in improvement districts. Appellant contends that, because of these things, no special benefits were taken into consideration in the levying of taxes for levee purposes.

If appellant was right in its contention that this was an *ad valorem* tax and that the benefits to the property were not taken in consideration, then it would be correct in its claim that the damages should be offset by the bene-

fits.    We do not agree with counsel for appellant in this contention.   The section of the act creating this district providing for assessments is an exact copy of the section of the act of 1905 creating a levee district, and the court, in construing that act, said: "Appellant makes an attack upon the validity of the statute in so far as it attempts to authorize a tax on the railroad, on two grounds, viz:   First, that it is an attempt to impose a tax regardless of any benefit derived from the improvement; and, second, that the method authorized by the statute of assessing railroad property is invalid.   We will dispose of these two questions in order in which they are presented by appellant's counsel.   *   *   *   The act provides that the board of directors shall annually assess and levy a tax not to exceed 4 per cent. on the real estate in the district, according to the valuation of lands on the taxbooks for State and county purposes, and upon railroad track of all railway companies as appraised by the State Board of Railroad Commissioners.   In other words, that the assessment shall be according to value as appraised for State and county taxation.   This is the method of assessment for local improvements which was approved by this court in *Ahern* v. *Board of Improvement, supra,* and *Porter* v. *Waterman,* 77 Ark. 383.   *   *   * The fact that the assessment is made upon the whole value of the property does not imply that it is not also according to the benefits to accrue from the improvement, for it is not an arbitrary or unreasonable method of ascertaining the amount of the benefits to assume that they will accrue in proportion to the actual value of the whole property.   The Legislature acted upon this assumption in providing that the assessments should be fixed according to value, and we cannot say it is arbitrary or unreasonable." *St. L. S. W. Ry. Co.* v. *Board of Directors,* 81 Ark. 562, 99 S. W. 843.

It follows, from the rule announced in the above case, that the land in appellant district is, in fact, assessed according to its benefits.   It must be assessed annually, and, although it is provided that the annual

tax must be levied on the valuation of the lands as they appear on the assessment books of the county, still, as held by this court in the case above cited, this is an assessment on a benefit basis. This being true, appellee will have to pay annually for all the benefits received by the construction and maintenance of the levee, and it would therefore have been improper to deduct the benefits from the amount of damages to plaintiff's land in this case. Her land is benefited by the levee, but she pays these benefits in annual installments, so that there would be no reason or justice in offsetting the damages with benefits accruing to the land. She must pay the assessments for the benefits received like any other landowner, and, if the district took or damaged her land, it necessarily follows that it would have to pay whatever amount she was damaged by reason of the taking.

Appellant's counsel calls attention to a number of cases where land is taken for public use and the damages caused thereby are offset by the benefits to the land, but these are cases where the landowner was not paying for the benefits. Of course, where land is taken and the taking benefits the other lands of the party, whatever benefits accrue to the landowner are deducted from the amount of damages caused by the taking, but these cases have no application where the landowner pays for the benefits, as in this case. There was ample evidence to sustain the verdict, and the case is therefore affirmed.