CITY OF ST. LOUIS PARK v. ALFRED M. ENGELL AND OTHERS. FIRST NATIONAL BANK OF MINNEAPOLIS AND ANOTHER, COEXECUTORS AND COTRUSTEES UNDER LAST WILL OF WILLIAM HOW SMITH, RESPONDENTS.

168 N. W. (2d) 3.

May 2, 1969—Nos. 41332, 41782.

*Harold C. Evarts* and *H. H. Burry,* City Attorney, for appellant.

*Dorsey, Marquart, Windhorst, West & Halladay* and *Craig A. Beck,* for respondents.

*Louis W. Claeson, Jr.,* for League of Minnesota Municipalities, amicus curiae.

NELSON, JUSTICE.

Petitioner-appellant, the city of St. Louis Park, a municipal corporation, exercised its right of eminent domain pursuant to Minn. St. c. 117 to acquire for public use:

"* * * [A]n easement for street purposes * * * in, on, over and across [the lands involved herein described as Parcel 3,[1] and other

---

[1] Parcel 3 is described as the north 33 feet of the following described tract: "That part of the Northwest Quarter (NW1/4) of the Northwest Quarter (NW1/4) of Section Seven (7), Township Twenty-eight (28), Range Twenty-four (24) described as follows:

"Commencing at the Northwest corner of said Northwest Quarter (NW 1/4) of the Northwest Quarter (NW1/4), running thence South along the West line of said Section Four Hundred Forty-three and 71/100, (443.71) feet, thence East parallel with the North line of said Section Nine Hundred Sixty-seven and 1/10 (967.1) feet to the point of beginning of the tract to be described, thence South parallel with the East line of said subdivision to the center line of Excelsior Road; thence Northeasterly along the center line of said Road to the East line of said subdivision, thence North along the East line of said subdivision to the intersection with a line drawn from the actual point of beginning point, parallel with the North line of said Northwest Quarter

lands] for the purpose of building, constructing, reconstructing and improving a public street and to thereafter maintain same within the corporate city limits of said municipal corporation."

The names of parties interested in Parcel 3 and the nature of their interest are as follows:

| | |
|---|---|
| "William How Smith | Fee |
| Mary Larkin Smith | Inchoate |
| Western Oil and Fuel Company, a Delaware corporation | Assignee of Lessee of Record |
| Richard E. Peterson | Sub-Lessee |
| Petroleum Properties, Inc., a Minnesota corporation | Possible Claimant" |

The report of the appointed commissioners awarded damages of $2,700 for the taking of this parcel. Separate appeals to the District Court of Hennepin County were taken from this award by petitioner and by Paul J. Schmitt and First National Bank of Minneapolis, a United States corporation, coexecutors and cotrustees of the estate of William How Smith, deceased. (Schmitt and the bank will be referred to hereafter as the coexecutors.)

A jury in the subsequent proceeding rendered the following special verdict:

---

(NW1/4) of the Northwest Quarter (NW1/4); thence West to the point of beginning, except that part thereof described as follows:

"All that part of the Northwest Quarter of the Northwest Quarter of Section 7, Township 28, Range 24, described as follows: Commencing at the Northwest corner of said Northwest Quarter of the Northwest Quarter of said Section 7; thence South along the West line of said quarter-quarter, 443.71 feet; thence East parallel with the North line of said quarter-quarter to the East line of said quarter-quarter which is the actual point of beginning of the land to be described; thence South along said East line to the center line of Excelsior Road; thence Southwesterly along the center line of said Excelsior Road 100 feet; thence North parallel with said East line of said quarter-quarter to its intersection with the first above described parallel line; thence East along said parallel line to the actual point of beginning, except road, being registered land as evidenced by Certificate of Title No. 130123."

"Question: What is the fair and reasonable market value as of February 17, 1966, of the land acquired by the petitioner, City of St. Louis Park, a Municipal Corporation, designated as Parcel 3?

"Answer: $      '13,500'
_____
Amount of Money

"Question: Did 39th Street create special benefits to the remaining portion of the Smith property, that is, to the remaining portion of the original tract?

"Answer:      'Yes'
_____
Yes or No

"If your answer to the last question is 'Yes', answer the following question:

"Question: What is the fair and reasonable value of such special benefits?

"Answer: $      '17,000'
_____
Amount of Money"

The jury's special verdict was returned on November 7, 1967.

The trial court thereafter ordered judgment entered in the sum of $13,500 in favor of the coexecutors, together with their costs and disbursements, and refused to offset the special benefits against the damages upon the ground that the cost of improvements going into 39th Street had already been partly assessed by the city of St. Louis Park and the remainder of the cost could be assessed pursuant to powers granted to the city by statutes of the State of Minnesota and by the city's home rule charter.

Petitioner moved to amend the order for judgment on the special verdict to provide as follows:

"The fair and reasonable market value of the lands acquired, here designated as Parcel 3, as of the date of taking, is in the amount of $13,500.

"The taking of the lands designated herein as Parcel 3 for street purposes, known as 39th Street, created special benefits to the remainder of the lands designated as Parcel 3.

"The special benefits to the remainder of Parcel 3 not acquired herein, caused by the taking of 39th Street, are in the amount of $17,000.

"Respondents First National Bank of Minneapolis and Paul J. Schmitt,

co-executors and co-trustees under the last will and testament of William How Smith, deceased, are entitled to recover nothing from petitioner, City of St. Louis Park, and said petitioner is entitled to recover its costs and disbursements herein."

The trial court on February 7, 1968, denied that motion and petitioner appealed from its order (41332).

Petitioner has also filed a petition for discretionary review (41782), respondents having moved for a dismissal of petitioner's appeal on the ground the order was not appealable. The motion to dismiss the appeal is denied. Judgment was entered April 1, 1968.

With respect to discretionary review, we want to make it clear that the exercise of discretion in one case is not necessarily a precedent for another. This court must determine under what circumstances it will exercise its extraordinary powers and grant a discretionary review. We have determined in this case to grant petitioner's request and render a decision upon the merits.

The sole issue appears to be whether the trial court was correct in refusing to offset special benefits when the cost of the improvements could be specially assessed against benefited property owners. An agreed statement of the case for the purposes of this appeal was entered between petitioner and its counsel and the respondent coexecutors, Mary Larkin Smith, and their counsel. This was approved by the trial court as being conformable to the truth and setting forth so many of the facts averred or approved as were thought to be essential to a decision on the issue raised on this appeal.

Petitioner contends that the special benefits should be set off against the damages sustained on account of the taking of Parcel 3. In other words, petitioner maintains that the coexecutors are not entitled to recover any damages because the damages awarded for Parcel 3 are less than the value of the special benefits. Respondents contend that the special benefits should not be set off against the damages because the cost of the sanitary sewer, storm sewer, and water main has been assessed against the abutting land, including decedent's tract, and the cost of the construction of 39th Street can be assessed against such property. They content that to permit the off-

set would make the estate of decedent pay twice for the same benefits, once under the special assessments, and again as an offset to the damages for the taking of Parcel 3. They cite in support of their position Atkins v. City of Boston, 188 Mass. 77, 74 N. E. 292; 3 Nichols, Eminent Domain (3 ed.) § 8.6209, p. 102, and cases cited; and St. Louis Park Home Rule Charter, c. 7.

3 Nichols, Eminent Domain (3 ed.) § 8.6209, p. 102, states the law to be as follows:

"* * * Ordinarily, however, unless there is some special statutory provision which leads to a different conclusion, there can be no set-off of the benefits that will result from the improvement for which a piece of land has been taken when it lies within the power of the public authorities to levy a special assessment for the same improvement."

No statutory provision in Minnesota has been cited which leads to a different conclusion from that stated in Nichols.

This court has previously established that where property is taken under the power of eminent domain, special benefits shall not be set off against an award of damages where the cost of improvements may be paid for by special assessments. In re Improvement of Third Street, St. Paul, 177 Minn. 159, 225 N. W. 92. A review of that decision discloses facts similar to those in the case at bar. In that case Third Street had been widened, taking property off the front of the landowner's lot. The following comment by this court in the Third Street case practically disposes of the issue presented here (177 Minn. 161, 225 N. W. 93):

"* * * There is no reasonable theory on which the taking away of the strip can reduce this value, unless it be on the theory of deducting therefrom some benefit that accrues to the remaining tract by reason of the widening of the street and extending the street up to the line of the remaining property. *But where, as here, damages and benefits are assessed separately, there can be no such reduction in arriving at the amount of damages, which is the only question here presented.*" (Italics supplied.)

Respondents contend that the foregoing decision is consistent with the overwhelming weight of authority in this country and that it establishes a rule which prevents double taxation and which is just and equitable to all

parties concerned. If we contrast the power of eminent domain with the power of taxation, we must recognize that the power of eminent domain is a constitutional doctrine permitting the taking of private property for a public purpose but requiring that the property owner receive just compensation—that compensation which will fairly reimburse him for what has been taken from him—, while the power of taxation is an inherent and necessary power of government. The power of a public authority to levy a special assessment for improvements stems from the taxing power and is promulgated by legislative action. Minn. St. 429.051 provides:

"The cost of any improvement, or any part thereof, may be assessed upon property benefited by the improvement, based upon the benefits received, * * *."

St. Louis Park Home Rule Charter, § 7.03, provides in part:

"* * * The amounts assessed to benefited property to pay for such local improvements may equal the cost of the improvements, including all costs and expenses connected therewith, with interest, until paid, but shall not exceed the benefits to the property."

As stated by the court in Matter of Forty-Eighth Street, 19 App. Div. 602, 46 N. Y. S. 311, the power of taxation is practically absolute, *except in so far as it is limited by the Constitution.*

Special benefits are not offset where the condemning authority has the power to require property owners to pay for the improvements through the levy of special assessments. If the rule were otherwise and damages resulting from condemnation proceedings were offset by special benefits and, either before or after the condemnation proceedings, a special assessment was levied against that same land for such benefits, the landowner would be required to pay twice for the same special benefits. That this denies the landowner the just compensation guaranteed to him by the Federal and State Constitutions has been recognized by an overwhelming majority of the courts in this country. These tribunals have refused to allow such a result. See, Van Buren v. Smith, 175 Ark. 697, 300 S. W. 397; Miller Levee Dist. No. 2 v. Dale, 172 Ark. 942, 290 S. W. 948; Driver v. Road Improvement Dist. No. 1, 172 Ark. 340, 288 S. W. 711; Leopold v. City of Chicago, 150 Ill. 568, 37 N. E. 892; City of Bloomington v. Pol-

lock, 141 Ill. 346, 31 N. E. 146; Anderson v. Douglas County, 107 Kan. 655, 193 P. 329; Garvey v. Revere, 187 Mass. 545, 73 N. E. 664; Green v. City of Fall River, 113 Mass. 262; In re Board of County Road Commrs. 242 Mich. 239, 219 N. W. 74; City of Detroit v. Chaffee, 68 Mich. 635, 37 N. W. 19; In re Improvement of Third Street, St. Paul, *supra*; Jefferson City v. Wells, 263 Mo. 231, 172 S. W. 329; Gutschow v. Washington County, 74 Neb. 794, 105 N. W. 548, 107 N. W. 127; Matter of Forty-Eighth Street, *supra*; City of Norfolk v. Chamberlain, 89 Va. 196, 16 S. E. 730; State ex rel. Beecher v. Gilliam, 146 Wash. 6, 262 P. 138. See, also, Annotation, 13 A. L. R. (3d) 1149, 1160, which states:

"In most jurisdictions where the deduction of benefits from compensation or damages is allowed in highway condemnation cases, the benefit must be one which is 'special' to the property in question."

See, 13 A. L. R. (3d) 1163, and Minnesota cases cited, to which may be added State, by Mondale, v. Mecklenburg, 273 Minn. 135, 140 N. W. (2d) 310.

It is made clear in our cases dealing with special benefits that the same measure is utilized in this state to determine the amount of special benefits in a condemnation proceeding or in a levy of a special assessment.

This court has held that in assessment procedures special benefits are determined by the amount of the increase in the market value of the property attributable to the improvement. See, In re Improvement of Superior Street, Duluth, 172 Minn. 554, 216 N. W. 318; Spencer, *The New Minnesota Improvement-Assessment Procedure (Chapter 398, Laws of 1953)*, 38 Minn. L. Rev. 582. The same measure is utilized in condemnation cases when special benefits are properly deducted from the damages awarded. State, by Mondale, v. Mecklenburg, *supra*; State, by Lord, v. Hayden Miller Co. 263 Minn. 29, 116 N. W. (2d) 535.

It is clear from the foregoing authorities that in both eminent domain and assessment proceedings the value of special benefits is found by determining what increase, if any, there has been in the fair market value of the benefited land. In many condemnation cases the assessment procedure has been conducted prior to the date of taking or the time of trial. Those courts which have been faced with a situation similar to the one in the case

at bar, where there has been no final determination concerning the assessment, have held that the mere power of the condemning authority to assess for the improvement, whether or not the power has been or will be exercised, is sufficient to justify the denial of a setoff of special benefits. Village of Grant Park v. Trah, 218 Ill. 516, 75 N. E. 1040; Atkins v. City of Boston, *supra*; City of Detroit v. Loula, 227 Mich. 189, 198 N. W. 837; In re Improvement of Third Street, St. Paul, *supra*. The court in the Atkins case said (188 Mass. 78, 74 N. E. 293):

"The case presented therefore is one where a benefit assessment could have been made, but the city officials neglected to make one.

\*     \*     \*     \*     \*

"Where a benefit assessment might have been laid but none has been laid, there is no more reason for setting off the benefit than if it had been made."

In City of Detroit v. Loula, *supra,* the common council of that city, before instituting condemnation proceedings, declared its intention to assess a part of the damages awarded against a special district extending 100 feet back from the lines of a street, as widened, because in the council's opinion such real estate would be specially benefited. The Michigan Supreme Court found that this provided a method by which the land not taken would pay its just share for the advantage acquired by reason of the improvement and said (227 Mich. 192, 198 N. W. 838):

"\* \* \* Where the cost of an improvement is to be borne, in whole or in part, by special assessment upon property within a district benefited thereby, the jury can give no consideration to any benefit or advantage to land not taken, in awarding compensation for land taken and damages to land affected thereby."

The authorities reveal that in most cases assessment procedures are similar to that of the city of St. Louis Park, that is, the assessment may be levied only against property which has been specially benefited and the assessment cannot exceed the cost of the improvement. But even in this situation the courts have uniformly held that special benefits should not be offset in condemnation proceedings. Bauman v. Ross, 167 U. S. 548, 17 S.

Ct. 966, 42 L. ed. 270; Gregg v. Sanders, 149 Ark. 15, 231 S. W. 190, 17 A. L. R. 59; City of Detroit v. Loula, *supra.*

In Bauman, the United States Supreme Court was faced with an assessment statute which provided that the assessment would be apportioned against benefited properties and that only one-half of the cost of the improvement would be assessed. The statute provided both for an award of damages for the value lost by the landowner and for an assessment of taxes for any benefits realized by the property. The court observed that the statute guarded against the possibility of a double assessment.

In Gregg, the Supreme Court of Arkansas held that to set off special benefits would be to levy a double charge against the landowner and that whether or not the special assessment was as much as a special benefit a property owner cannot be asked to contribute to the common good. Thus, petitioner's position herein is contrary to the rule prevailing in Minnesota and throughout the United States.

Petitioner appears to admit that the weight of authority is contrary to its position. Nevertheless it argues that this court should reject its own precedent and that of all other courts in this country, presenting as its only authority City of Albuquerque v. Chapman, 76 N. Mex. 162, 413 P. (2d) 204. The language referred to by petitioner from that decision appears to be dictum. The facts, however, are distinguishable in that the State of New Mexico allows a setoff of both general and special benefits, whereas Minnesota allows a setoff of special benefits only—if no special assessments will be made to pay for their cost.

Respondents contend that the Chapman case does not represent the better view and that this court ought not to abandon its prior decisions and the decisions of other jurisdictions that have been cited herein. With that contention we are in agreement. We think that the rule contended for by respondents brings about a result which amounts to equitable compensation for both the landowner and the assessing authority. The constitutional provisions relating to the power of eminent domain require that a property owner receive just compensation for land taken by condemnation. We suggest that public authorities which instigate improvements resulting in special benefit to private property are empowered to recover the cost of those improvements by means of special assessments and in the instant case the

city of St. Louis Park may levy special assessments to pay for the cost of the improvements. The procedure for such levy has already been established and will no doubt be followed.

We think the trial court was correct in awarding the constitutionally required "just compensation" herein without regard to special benefits since it is clear that the condemning authority will ultimately receive all of the compensation to which it is entitled. The trial court's ruling thus results in equitable treatment for both respondents and petitioner. We have long since established the rule in this state that it is better to provide that special benefits be determined only once, in the statutory special-assessment proceeding where all landowners and other interested parties will be represented and heard, rather than in a condemnation proceeding where only the specific property owner is a party. That result is achieved by the decision of the trial court here, as the rule contended for by respondents and established by the court below limits the assessing authority to one determination of special benefits.

Petitioner contends that if special benefits are not offset against damages in the condemnation action there is a possibility that less than the total market value of special benefits may be charged against the landowner. No authority has been submitted that requires that each and every cent of the market value of special benefits be charged against the landowner.

The rule which has been contended for by respondents determines that all land specially benefited will be assessed its proportionate share of the cost of the improvement, whereas if the special benefits were to be set off in the condemnation action, and if a special assessment were to be levied for those same special benefits, the landowner who had property taken might well be required to pay an amount in excess of that required of landowners who did not lose land in the condemnation proceedings. Under the circumstances the cost of the improvements would be disproportionately assessed because a person whose land was actually taken and who had suffered damages as a result of that taking would be required to pay more for the improvements to the area than his neighbor whose land was not taken. Such a rule would penalize the individual owner whose property has been taken. As we view it, the decision entered by the court below will not in

320

any way prejudice the right of petitioner to later recover by special assessment the cost of the improvements known as 39th Street, and respondents are accordingly entitled to an affirmance herein.

Petition for discretionary review granted (41782).

Affirmed (41332).