STATE, BY ROBERT W. MATTSON, ATTORNEY
GENERAL, v. CARMEN B. MICHELSON AND OTHERS.
ELMER C. HALL AND ANOTHER, RESPONDENTS.

170 N. W. (2d) 442.

September 5, 1969—No. 41508.

*Douglas M. Head,* Attorney General, *Donn D. Christensen,* Deputy Attorney General, *Richard H. Kyle,* Solicitor General, and *James M. Kelley,* Special Assistant Attorney General, for appellant.

*Hanson & Grinley, A. K. Grinley, Christian, Slen, Savelkoul, Johnson & Broberg,* and *Rolf O. Slen,* for respondent.

Heard before Knutson, C. J., and Murphy, Rogosheske, Sheran, and Peterson, JJ.

PER CURIAM.

The state, seeking a new trial in a condemnation proceeding, undertakes to resolve this legal issue: Whether, when a portion of a farm is acquired by the state for the construction of a diamond interchange forming a portion of an interstate highway, absent evidence of an actual change in the physical characteristics of the property remaining, evidence as to the remaining property's enhanced value occasioned by its proximity to the interchange and its adaptability to a higher, better, and more profitable use creates a question of fact for the jury on the issue of special benefits. We do not think that the situation in this case warrants a detailed discussion, much less a final resolution, of this important issue.

The broad principle that the state seeks to establish has assumed increased importance in this day of vast highway construction, with substantial potential benefits inuring to individuals and, of course, to the general public. The state is concerned that individuals shall not reap a windfall from public expenditure, which arguably occurs where a landowner is wholly compensated for the taking of part of his property without deduction for any enhanced value of his remaining property. The individual, even assuming that a benefit inures peculiarly and specially to him in distinction to others in the general vicinity of the public construction, is concerned that he may unfairly pay a greater share of the construction cost than another property owner whose land is as specially and strategically situated as his, but who has had no property physically appropriated and, hence, is not required to pay. The individual may additionally feel that the special benefit to him of a yet-to-be-constructed facility may be unduly speculative. Our own decisions have sought, however unsuccessfully, to resolve these competing concerns.

Mantorville Ry. & Transfer Co. v. Slingerland, 101 Minn. 488, 112 N. W. 1033, 11 L.R.A. (N.S.) 277, upon which the trial court rightly relied, established the narrow rule that an actual alteration of the land is the distinguishing element which easily and practicably isolates special benefits from general benefits. Our court at that time agreed with the principle of Washburn v. Milwaukee & Lake Winnebago R. Co. 59 Wis. 364, 377, 18 N. W. 328, 334, that there must be an improvement in the physical condition and adaptability of the land for use, "such as by reclaiming waste land, by draining or flowing a marsh, * * *." The Mantorville case held there was no special benefit in the

fact that a transportation improvement opened up the possibility of quarrying on land that was otherwise devoted to farming. More recently, however, in State, by Mondale, v. Mecklenburg, 273 Minn. 135, 140 N. W. (2d) 310, our court recognized a special benefit to farm lands where a highway, constructed on a new location between two farms, created direct access where none had previously existed and opened the land to the higher and better use of development to lakeshore residential lots. Wisconsin has at the same time broadened its own rule in two highway cases to include enhanced value due to more advantageous adaptability for use of land in proximity to a no-access highway interchange. See, Petkus v. State Highway Comm. 24 Wis. (2d) 643, 130 N. W. (2d) 253; Heitpas v. State, 24 Wis. (2d) 650, 130 N. W. (2d) 248. We are urged by the state in this case to "remain in the lead with the states which recognize expanded criteria for determining when a benefit is special."[1]

The landowners' property in the instant case is situated in "near proximity" to a highway interchange, but its particular situation seems so untypical as not to warrant a complete recasting of our existing rules. A 120-acre farm, located approximately 3 miles north of Albert

[1] Vermont is an example of states which have adhered to a narrower rule. In Howe v. State Highway Bd. 123 Vt. 278, 283, 187 A. (2d) 342, 345, the Vermont Supreme Court recently held that a jury was not permitted to consider the benefits resulting to the remaining property located on a highway interchange, stating, "* * * [The asserted special benefit from proximity to a highway interchange] must arise, if at all, from traffic possibilities with reference to the appellants' place of business. At the outset, it should be noted that there is no evidence that the interchange was constructed with the appellants especially in mind. It was constructed for the convenience of the general public just as the highway itself, of which it is a part, was constructed for that purpose. Benefits attached to the currents of public travel are not vested rights and so diversion of traffic does not furnish a ground for compensation. * * * By the same token, it follows as an inescapable corollary that a potentially increased flow of traffic is not to be regarded as a special benefit."

Although the issue was raised in a different setting, we have recently exhibited continued concern about the potential unfairness between landowners similarly situated by location upon a new city street, where property was taken from one landowner and not from another. See, City of St. Louis Park v. Engell, 283 Minn. 309, 168 N. W. (2d) 3.

Lea, Minnesota, was bounded on the west by County Road No. 73 and diagonally on the southwest by State Trunk Highway No. 13, identified for present purposes as Old No. 13. The farm had unrestricted access to County Road No. 73 along its entire westerly boundary and 1,470 feet of unrestricted access to Old No. 13. The highway construction resulting in a partial taking of the farm involves the completion of Interstate Highway No. 90, running in generally an east-west direction, and upgrading and relocation of No. 13 somewhat to the south and west of its original location. The farm was bisected into approximately equal parts by Interstate Highway No. 90.[2] Access between the two portions required traveling about half a mile on four different roadways to get from one to the other. More important, the farm lost 650 feet of its access to County Road No. 73 and all of its access to Old No. 13 except for one 200-foot opening. Access from the New No. 13 to the south portion of the farm would be by two interconnecting roads totaling 560 feet in length, not too inaptly referred to by one witness as "an obstacle course." Access from Interstate No. 90 to the south portion of the farm would require westbound traffic to "peel off" 3,400 feet, and eastbound traffic 2,950 feet, from its intersection with New No. 13. Although it appears that oil companies had initially taken options to a 5-acre plot in the south portion of the farm, situated as it was in the southeast quadrant of the interchange area, such options had apparently been dropped as the remoteness of the plot from the contemplated interchange was more definitely ascertained.

The state offered the expert opinion testimony of one Robert J. Naslund as to the after-taking value of the 5-acre plot, based upon this predicate: That it was specially benefited as a result of the construction of the two new highways, and the interchange between them; that, *assuming* subsequent favorable zoning, the highest and best use of the plot would be commercial use; and that sales of property similarly situated on interchanges "in the vicinity" and the scarcity of such sites gave it peculiarly enhanced value. This testimony was excluded on the ground that there was, under our rule, no special benefit, and without reference to the somewhat speculative character of the witness' value testimony.

---

[2] After the taking, approximately 46.71 acres remained on the north and 43.09 acres remained on the south, the balance being taken for the construction of the interstate and its connecting ramps with New Highway No. 13.

We think the exclusion of the state's expert testimony was not prejudicial to the state in the particular circumstances of this case. Even were we disposed to revise or rearticulate our rule of special benefits at this time, a resulting remand of this case for retrial would serve no substantial purpose.

Affirmed.