STATE, BY ROBERT W. MATTSON, AND ANOTHER.
v. VERNON R. COLON AND OTHERS.
J. D. KELLEY AND ANOTHER, d.b.a. KELLEY AND
MORGAN ASSOCIATES, RESPONDENTS.

194 N. W. 2d 574.

January 21, 1972—No. 42814.

*Warren Spannaus,* Attorney General, *Eric B. Schultz,* Deputy Attorney General, *Jerome D. Truhn,* Solicitor General, and *Gary H. Peterson,* Special Assistant Attorney General, for appellant.

*Hanson & Grinley, A. K. Grinley, Christian, Slen, Savelkoul, Johnson & Broberg,* and *Rolf O. Slen,* for respondents.

KELLY, JUSTICE.

This case involves the condemnation for highway purposes of a portion of respondents' land. The state appeals from an order denying its motion for a new trial. The thrust of the state's appeal is that the lower court erred in refusing to submit to the jury the issue of whether special benefits inured to the remainder of the land and that the court should have allowed testimony and other evidence as to the value of those claimed benefits. We affirm.

The issue in this case is identical with that posed in State, by Mattson, v. Michelson, 284 Minn. 563, 564, 170 N. W. 2d 442, 443 (1969):

"* * * Whether, when a portion of a farm is acquired by the state for the construction of a diamond interchange forming a portion of an interstate highway, absent evidence of an actual change in the physical characteristics of the property remaining, evidence as to the remaining property's enhanced value occasioned by its proximity to the interchange and its adaptability to a higher, better, and more profitable use creates a question of fact for the jury on the issue of special benefits."

Prior to the condemnation respondent landowners had an 80-acre farm in Freeborn county. The land was bordered on the

west by County Road No. 22 (Bridge Avenue) for a distance of one-fourth mile and on the north by a township road for a distance of one-half mile. At that time the tract had unlimited access to these roads.

The state in this action condemned 17.9 acres of the farm for use as a part of Interstate Highway 90 (called I-90). When completed, I-90 will traverse the property diagonally, running in a southeasterly-northwesterly direction. Near the northwest corner of the property, I-90 will intersect and pass over County Road No. 22. A part of the interchange between County Road No. 22 and I-90 will be constructed on a portion of the landowners' property acquired in the instant condemnation action.

After the taking, approximately 9.30 acres will remain on the north and 51.16 acres will remain on the south side of I-90. County Road No. 22 will remain a blacktop, 2-lane road and the subject property's access to that road will be restricted for approximately 400 feet along the northwest border. There will be approximately 920 feet of access along County Road No. 22 and approximately 1,360 feet of access along the township road in the property's northeast corner, providing access to the 51.16-acre tract and the 9.30-acre tract respectively. After the taking, the westbound traffic will have 2,333 feet from the beginning of the deceleration lane to the closest portion of the farm remaining after the taking, and the eastbound traffic will have 1,736 feet from the beginning of its deceleration lane to the same place.

Prior to the taking, the landowners could travel on their own land for one-third of a mile to get from their buildings to the north side of their farm. After the taking, they will have to travel two-thirds of a mile on Bridge Avenue and the relocated township road to get to the same place.

The commissioners' award for the taking of the 17.9 acres and for several temporary easements expiring December 1, 1970, was $8,300. Both parties appealed to the district court from that award, and the jury there awarded $11,000. No severance or

other damages were asked for or awarded for the remaining land.

Gene McLaughlin, the state's real estate appraiser, testified that the highest and best use of the land before the condemnation was for farming and that the value of the entire tract before the taking was $31,398. Had he been allowed to do so, he would have testified that the highest and best use of the remaining property after the condemnation was for service stations, motels, and other businesses which cater to the traveling public and that the value of the remaining property was $79,810. Had McLaughlin's testimony of enhanced value been allowed, and had it been adopted by the jury, it would have resulted in the state's acquiring 17.9 acres of land and the temporary easements without any payment. The landowners would have received nothing by way of damages for the land, temporary easements, and loss of access, nor would they have received anything by way of severance or other damages to the remainder of their property. McLaughlin would have testified that the change in the highest and best use was occasioned by the subject property's proximity to the diamond interchange at the intersection of County Road No. 22 and I-90. To support his opinion he would have testified to comparable sales within the immediate area of the interchange.

The trial court refused to permit McLaughlin to testify to the matters contained in the offer of proof on the grounds that as a matter of law special benefits were not involved. The court also refused to permit the state to introduce evidence of a sale of a portion of the landowners' remaining property, the sale having taken place after the taking.

The state's position is that individuals should not reap a windfall at the taxpaying public's expense and that testimony and evidence showing the value of the landowners' remaining property after the taking should have been admitted into evidence.[1]

---

[1] The state, relying heavily on decisions from the Wisconsin Supreme Court, wrote as follows in its brief: "In two relatively recent cases, *Petkus v. State Highway Commission,* 24 Wis. 2d 643, 130 N. W. 2d 253

The landowners reason as follows:

(a)  The benefits in this case should not be deducted from the award of damages (i. e., value of land actually taken in the case at bar) since similarly situated landowners whose land is not taken get the same benefits gratis.

(b)  The benefits in this case should be narrowly conceived because this court permits the deduction of special benefits from the aggregate award (i. e., value of land actually taken and damages, if any, to remainder) which in this case would mean that respondents could receive nothing for the land actually taken.

---

(1964), and *Hietpas v. State,* 24 Wis. 2d 650, 130 N. W. 2d 248 (1964), which are factually similar to the instant case, the Wisconsin Court rejected the use of actual physical change as the sole criterion for determining when a benefit may be special. In *Petkus, supra,* the court concluded that the *Washburn* rule [Washburn v. Milwaukee & L. W. R. Co. 59 Wis. 364, 18 N. W. 328 (1884)], divorced from the facts of the case, ignores today's economic realities and public necessity. The Court stated at p. 255 of 130 N. W. 2d:

" '* * *·We agree that the definition of special benefits should be extended to include enhanced value because of more advantageous adaptability for use. Land which by reason of its proximity to a no-access highway interchange is enhanced in value because its highest and best use, assuming the completion of the public improvement, is immediately favorably changed or its potential for favorable change in use appears by reasonable probability to be imminent, is specially benefited.'

"In *Hietpas, supra,* the court further stated:

" '* * * Special benefits accruing to land not taken in eminent-domain proceedings, which may be set off against damages if they enhance the market value immediately after taking of the land remaining, include physical improvements to the land, imminent adaptability of the land to a higher and better use from an economic standpoint because of proximity to the public improvement; and immediate adaptability by· reason of proximity to the improvement ·to a use which was relatively remote in point of time before the taking, even though such use may have, to some degree, affected the market value of the land.' 130 N. W. 2d 251."

(c) If, however, the benefits to the remaining property here are determined to be special benefits, this court should adopt the rule that such benefits may only be set off against the damages, if any, to the remaining land.[2]

This type of case, involving the deductibility of benefits where a landowner's remaining property is enhanced in value, has presented a number of difficult questions with varying decisions throughout the United States.

Some states do not permit benefits of any kind to be offset against any part of the award.[3] Other states permit general as well as special benefits to be deducted.[4] About 17 states do not permit special benefits to be deducted from the amount awarded for the land actually taken,[5] some of these states permitting an offset only against that part of the award, if any, for damages to the remaining land.[6] In addition, there is a variance among the states as to what constitutes special as compared to general benefits.

This court has uniformly held that general benefits may not be deducted from the aggregate award of damages to the remaining land.[7] It has also uniformly held that special benefits should be deducted from the aggregate award, one exception being where the remaining land is subject to being again assessed for the improvement.[8]

---

[2] This is the rule in 17 states. Annotation, 13 A. L. R. 3d 1149, § 10a.

[3] Id. § 5.

[4] Id. § 9.

[5] Id. § 10.

[6] Ibid.

[7] This court has gone further than a number of states in preventing so-called windfalls by permitting the deduction of special benefits not only from damages to the remainder of the land but from the value of the land actually taken as well.

[8] In City of St. Louis Park v. Engell, 283 Minn. 309, 315, 168 N. W. 2d 3, 7 (1969), this court stated: "Special benefits are not offset where the condemning authority has the power to require property owners to pay for the improvements through the levy of special assessments. If the rule were otherwise and damages resulting from condemnation pro-

The narrow issue for decision is whether the enhancement in value of the remaining land was a special benefit and thus deductible from the award for the land taken.

There is no question but what the land in this case, located in proximity to the Bridge Avenue interchange, became greatly enhanced in value. It is equally as obvious that this enhancement took place because of the expected traffic on the interstate highway.[9] In determining benefits, the emphasis may be placed upon the physical proximity of land to the interchange or upon the traffic to be expected. It can be argued that the interchange, with the expected traffic, is of general benefit to all the property in its vicinity and that the difference in benefits to respondent landowners' property as compared to property of other landowners in the immediate vicinity which was not taken is at best one of degree.[10]

---

ceedings were offset by special benefits and, either before or after the condemnation proceedings, a special assessment was levied against that same land for such benefits, the landowner would be required to pay twice for the same special benefits. That this denies the landowner the just compensation guaranteed to him by the Federal and State Constitutions has been recognized by an overwhelming majority of the courts in this country."

[9] In Farrell v. State Highway Bd. 123 Vt. 453, 194 A. 2d 410, 413 (1963), a highway condemnation case with a factual situation similar to the instant case, the Supreme Court of Vermont came to the same conclusion. The court stated: "Witness Thorne makes an effort of his own to get away from the word 'traffic.' He says that it is not a question of traffic, but of how much somebody will pay for land adjacent to these facilities. But, if we take this approach, this is an escape based on indirection. And under the statute we are only concerned with added value 'which inures directly to the owner.' Upon final analysis, Thorne's testimony provides no explanation for added value but that which arises from traffic and in the long run he comes to that statement himself."

[10] In Farrell v. State Highway Bd. *supra,* the Vermont court commented on that state's theory of special benefits in these words: "The Highway Board's whole theory of 'neighborhood benefits' does not assort with the legislature's controlling intention. It does not assort

196

Under our prior decisions, we have insisted for the most part that a special benefit requires a physical change on the subject

well with the generally recognized doctrine that special benefits are to be differentiated from general benefits by their nature or kind rather than by their degree or amount. The general good arising from a construction of this sort naturally is not felt in the same degree by all members of the public. A general benefit is nonetheless general merely because some enjoy it to a greater degree than others of the public at large. In this very case the evidence is that all owners within a one-half to three-quarters of a mile radius enjoyed the same benefits in varying degrees." 123 Vt. 459, 194 A. 2d 414.

The Supreme Court of Missouri, in State ex rel. State Highway Comm. v. Parker, 387 S. W. 2d 505, 507 (1965), held that the funneling of more traffic past a condemnee's property was not a special benefit, as an increased flow of traffic would benefit the area generally and not the condemnee's property specifically. Citing earlier decisions with approval the court pointed out that in State ex rel. State Highway Comm. v. Vorhof-Duenke Co. 366 S. W. 2d 329, 339 (1963), it had said: "* * * This court has held that increased facilities for the travel and transportation of the general public are not such benefits as may be deducted from the compensation and damages." Also, quoting from State ex rel. State Highway Comm. v. Turk, 366 S. W. 2d 420, 422 (Mo. 1963), the court wrote: "Upon the more general subject, we have said that 'traffic, great or small, is merely an incident of streets and highways and cannot be considered either as an element of damages or of benefits.' " The court concluded that "it is improper and incorrect to include the movement of traffic on a highway (greater or less, faster or slower, smoother or more congested) as an element of either special benefits or damages."

On the same issue the Supreme Court of California, in Pierpont Inn, Inc. v. State, 70 Cal. 2d 282, 295, 74 Cal. Rptr. 521, 530, 449 P. 2d 737, 746 (1969), said: "[The state] next contends that the court erred in ruling that there were no special benefits inasmuch as one expert witness testified that in his opinion respondent's property would benefit in the amount of $33,481 by reason of the existence of the freeway and the placement of an off-ramp in the vicinity of its property. The court's ruling was correct. Contrary to appellant's assertions, it is clear that the court did not base its holding upon the fact that the off-ramp itself was not located upon respondent's property. Rather, it was founded upon the proper recognition that this witness did not understand the

property.[11] That element is lacking in the instant case, particularly if we tie the gain in value to the expected traffic. The landowners in this case were not given any new access to the remaining land. Access to and from the interchange was by way of County Road No. 22 at points where there had been access prior to the taking.

The state asks this court to rule that the landowners receive nothing for the 17.9 acres of land taken because of the gain in value to the remainder of their land resulting from the increased traffic, a gain which the neighboring landowners receive gratis. If such a rule were to be adopted, it is possible that a landowner in some cases might have to give up all that he could possibly gain. The following statement from Beveridge v. Lewis, 137 Cal. 619, 625, 70 P. 1083, 1086, 59 L. R. A. 581, 587 (1902), although given in a different setting, seems appropriate:

"If he is compelled to contribute all that he could possibly gain by the improvement, while others in all respects similarly affected by it are not required to do so, he does not receive the equal protection of the law."

In Mantorville Ry. & Transfer Co. v. Slingerland, 101 Minn. 488, 501, 112 N. W. 1033, 1039 (1907), this court stated:

---

technical meaning of 'special benefits' because he acknowledged that the same benefit which accrued to respondent's property was received by 'all the properties in the vicinity' and that it was not 'special or peculiar only to Pierpont Inn.' "

[11] See, Mantorville Ry. & Transfer Co. v. Slingerland, 101 Minn. 488, 112 N. W. 1033 (1907) (physical change required); Haynes v. City of Duluth, 47 Minn. 458, 50 N. W. 693 (1891) (new road where no access previously existed); Burg v. Rosedale Township, 143 Minn. 424, 174 N. W. 309 (1919) (physical change made).

The fact that no new access was created for the landowners here suffices to distinguish this case from State, by Mondale, v. Mecklenburg, 273 Minn. 135, 140 N. W. 2d 310 (1966). In Mecklenburg, this court recognized a special benefit where a highway created a direct access where none had previously existed, opening up the land to a higher and better use for lakeshore residential lots.

"The defendant is not required to pay in part for the same thing which his neighbor receives gratis."

A similar thought was expressed by the Supreme Court of Hawaii in Territory of Hawaii, by Sylva, v. Mendonca, 46 Hawaii 83, 94, 375 P. 2d 6, 13 (1962):

"* * * It is to avoid the unfairness of making one man pay in land for that which another receives free that special benefits are narrowly conceived."

In City of St. Louis Park v. Engell, 283 Minn. 309, 168 N. W. 2d 3 (1969), this court held that special benefits are not to be offset against an award of damages where the condemning authority has the power to require property owners to pay for the improvement through the levy of special assessments. The reason for this ruling is that, if a landowner's award in a partial taking were subjected to a setoff for special benefits and to a special assessment for the same benefits, he might be required to pay an amount in excess of that required of others who receive the same benefits without losing any land. The court pointed out that "[s]uch a rule would penalize the individual owner whose property has been taken." 283 Minn. 319, 168 N. W. 2d 10.

Another reason for not permitting the setoff for gains in value due to the expected traffic increase is that the condemnee acquires no vested right in that traffic. The gain could be lost to him by rerouting the interstate highway, but such a diversion of traffic would not create a right to compensation. This point is commented on by the Vermont Supreme Court in Howe v. State Highway Bd. 123 Vt. 278, 283, 187 A. 2d 342, 345 (1963), as follows:

"* * * [The asserted special benefit from proximity to a highway interchange] must arise, if at all, from traffic possibilities with reference to the appellants' place of business. At the outset, it should be noted that there is no evidence that the interchange was constructed with the appellants especially in mind. It was constructed for the convenience of the general public just

as the highway itself, of which it is a part, was constructed for that purpose. Benefits attached to the currents of public travel are not vested rights and so diversion of traffic does not furnish a ground for compensation. * * * By the same token, it follows as an inescapable corollary that a potentially increased flow of traffic is not to be regarded as a special benefit."

The question of adopting the rule, suggested as an alternative by the landowners, that would permit special benefits to be deducted only from damages to the remainder of the land in a partial taking is academic because we hold that there were no special benefits in this case.

Our decision to affirm the lower court's ruling that there were no special benefits involved in this case is dispositive of the state's contention that the trial court should not have excluded the testimony of McLaughlin as to the value of the remaining property after the taking and the evidence of a sale of a portion of that property after the taking. This testimony and the sale obviously included the gain in value occasioned by general benefits, and they were properly excluded in accordance with the lower court's ruling on the issue of benefits. The excluded evidence, had it been admitted, would have confused the jury on the issue of benefits and would have had no application to any issue in this case.

Affirmed.

MR. JUSTICE TODD, not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.