*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0923**

Gerald L. Rehbein, et al.,
Appellants,

vs.

City of Lino Lakes,
Respondent.

**Filed March 28, 2016
Affirmed
Kalitowski, Judge\***

Anoka County District Court
File No. 02-CV-11-7762

Thomas J. Rooney, Larry W. Neilson, Rooney & Neilson, Ltd., White Bear Lake, Minnesota (for appellants)

Joseph J. Langel, Christian R. Shafer, Ratwik, Roszak & Maloney, P.A., Minneapolis, Minnesota (for respondent)

Considered and decided by Bjorkman, Presiding Judge; Halbrooks, Judge; and Kalitowski, Judge.

---

\* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**KALITOWSKI**, Judge

This appeal involves a special assessment levied by respondent City of Lino Lakes in 2011 against parcels owned by appellants Gerald L. Rehbein and Rehbein Properties (Rehbein). After a bench trial following his challenge to the special assessment, Rehbein argues that the district court erred in (1) determining that the project was an authorized local improvement under Minn. Stat. § 429.021 (2014), (2) finding that the project conferred a special benefit on Rehbein's parcels, and (3) finding that a temporary access road conferred a special benefit. We affirm.

## DECISION

"A special assessment is a tax, intended to offset the cost of local improvements such as sewer, water and streets, which is selectively imposed upon the beneficiaries." *Dosedel v. City of Ham Lake*, 414 N.W.2d 751, 755 (Minn. App. 1987). A city's power to impose special assessments is limited in three ways: (1) the land must receive a special benefit from the new improvement, (2) the assessment must be uniform upon the same class of property, and (3) the assessment may not exceed the special benefit. *Carlson-Lang Realty Co. v. City of Windom*, 307 Minn. 368, 369, 240 N.W.2d 517, 519 (1976). An assessment set higher than the special benefit conferred constitutes a taking without compensation to the extent of the excess. *Id.* at 370, 240 N.W.2d at 519.

A "[s]pecial benefit is measured by the increase in the market value of the land owing to the improvement." *Id.* at 369, 240 N.W.2d at 519. An appraiser determines market value by identifying "what a willing buyer would pay a willing seller for the

2

property before, and then after, the improvement." *Id.* "[M]arket value may be calculated on the highest and best use of the land." *Anderson v. City of Bemidji*, 295 N.W.2d 555, 560 (Minn. 1980).

After an assessment is adopted, an aggrieved person, who makes a timely objection, may appeal to the district court. Minn. Stat. § 429.081 (2014). At the district court, "the city is presumed to have set the assessment legally, and thus introduction of the assessment roll into evidence constitutes prima facie proof that the assessment does not exceed [the] special benefit." *Carlson-Lang Realty*, 307 Minn. at 370, 240 N.W.2d at 519. The aggrieved person overcomes the presumption by introducing competent evidence that the assessment is greater than the increase in market value of the property due to the improvement. *Id.* "When evidence is also received that the assessment is equal to or less than the increased market value, the district court must make a factual determination." *Id.* at 370, 240 N.W.2d at 519–20.

When reviewing the decision of the district court, this court conducts "a careful examination of the record to ascertain whether the evidence as a whole fairly supports the findings of the district court and whether these in turn support its conclusions of law and judgment." *Id.* at 373, 240 N.W.2d at 521. Testimony is considered in the light most favorable to the prevailing party, and the district court's findings "will not be reversed on appeal unless they are manifestly contrary to the evidence." *G.C. Kohlmier, Inc. v. Albin*, 257 Minn. 436, 442–43, 101 N.W.2d 909, 914 (1960).

The project at issue in this case involved the reconstruction of an interchange between a major north-south corridor, I-35E, and the primary east-side corridor running

3

through Lino Lakes, County State Aid Highway 14 (CSAH 14). Lino Lakes has limited access to the interstate, and CSAH 14 is the principle interchange for any development or activity that takes place in that corridor. The project resulted in changing the interchange at CSAH 14 and I-35E "from a two-lane undivided bridge and diamond interchange to an interchange and bridge with expanded capacity."

Lino Lakes commissioned an Alternative Urban Areawide Review to analyze development, which found "degraded mobility" at the intersection between CSAH 14 and the on/off ramps of I-35E. The study also analyzed the then-current on/off ramps and gave them an E and F. F is the lowest "level of service" rating available. According to the study, "transportation infrastructure can [generally] function at [levels of service] as low as D or E and still be considered an acceptable operating condition during peak hours in urban areas." But a traffic engineer testified for the city that a level of service F "is considered an extreme failure situation with extremely significant delay." As found by the district court, the "Interchange Project was considered nonessential for statewide development purposes, according to the Minnesota Department of Transportation, but necessary for local economic growth."

The cost of the project, approximately $22 million, was shared between Lino Lakes, Anoka and Washington Counties, the cities of Centerville, Hugo, and Forest Lake, and the town of Columbus. Lino Lakes ultimately assessed its total share of the project, $4,207,861, against 55 parcels of land near the interchange. Rehbein owns six of those parcels, which were assessed a total of $500,951 for the project. Lino Lakes levied $262,092 against the three and a half parcels comprising Clearwater Creek, which is

4

located on the southwestern quadrant of the interchange. $102,518 was assessed against Acton, which is comprised of one and a half parcels immediately south of Clearwater Creek; and $136,092 was levied against one parcel of land, Belland, which is in the northwest quadrant of the interchange.

Beginning in August 2006, Rehbein entered into a series of purchase agreements with Ryan Companies for the sale of property that included Clearwater Creek, which expressly acknowledged the interchange project. As found by the district court,

> The extended purchase agreement negotiations were due, in part, to the City's extensive search for project funding, the recessionary market, as well as negotiations between the City and Ryan Companies regarding the design of the Interchange Project and potential impacts on the portion of the Rehbeins' property subject to the purchase agreement.

The district court also found that the Minnesota Department of Transportation had no plans to improve the interchange before 2020.

Furthermore, the district court found that "[c]ontemporary correspondence shows that development of Clearwater Creek was bound up with the Interchange Project" and that the "Rehbeins were so assured of Ryan Companies' purchase of Clearwater Creek that they were ultimately absent from discussions with the City about the Interchange Project, leaving all the details in the hands of Ryan Companies."

The plans for the interchange project also included providing new access to Clearwater Creek, which would improve access to the property directly from CSAH 14. Northern Lights Boulevard was built as a temporary roadway to secure new access to Clearwater Creek, with the understanding that a permanent road would be constructed

5

when and if Clearwater Creek was developed and the developer paid for the road. Clearwater Creek was not developed, and Anoka County closed Northern Lights Boulevard in 2012, restoring the original access point.

Rehbein appealed the special assessment to the district court and moved for summary judgment, arguing that the special assessment was invalid as a matter of law because (1) Lino Lakes lacked the statutory authority to assess the costs of an interregional interchange because it is not a local improvement and because the relevant statute does not include interchanges in its exhaustive list of authorized projects, and (2) the interchange project confers only a general benefit to the public and not a special benefit that could be financed by special assessments.

In a thorough, well-reasoned order, the district court denied the summary-judgment motion, concluding that although the relevant statute does not expressly include freeway interchanges, the interchange project was composed of a series of local improvements that were either explicitly named in the statute or fall under the statutory category of street improvements.

In response to Rehbein's special-benefits argument, the district court determined that the condemnation cases cited for the proposition that proximity to interchange projects does not confer special benefits as a matter of law are not controlling. The district court concluded that a special-benefits determination is fact-specific, requiring an inquiry into whether the interchange project would result in a special benefit. Thus, at trial, the issue was the amount of special benefit the subject properties received by virtue of the

6

interchange project, as compared to the amount assessed against each of the subject properties.

Following the trial, in another detailed, well-reasoned order, the district court concluded that each subject property received a greater special benefit than the amount assessed against them. Specifically, the district court found that the appraisals, appraisal methods, and appraisal witnesses provided by the city were more credible than those provided by Rehbein. And the district court adopted the city's appraisal conclusions, which indicated that the project provided a special benefit to Rehbein's parcels that exceeded the special assessment. Specifically, the district court found that the project increased the value of Acton by $652,145.48, the value of Belland by $415,305.40, and the value of Clearwater Creek by $1,256,932.51.

**Authorized Local Improvement**

Rehbein argues that Lino Lakes was not authorized to impose special assessments for the interchange project under Minn. Stat. § 429.021, subd. 1, because in imposing a special assessment to fund a local improvement, a municipality is limited to "one of the enumerated categories listed in Minn. Stat. § 429.021." Rehbein notes that "the complete replacement of a freeway interchange" is not listed in the statutes and, accordingly, argues that the statute cannot properly be interpreted to authorize it. We disagree.

Minn. Stat. § 429.021, subd. 1, states, in relevant part:

> The council of a municipality shall have power to make the following improvements:
> (1) To acquire, open, and widen any street, and to improve the same by constructing, reconstructing, and maintaining sidewalks, pavement, gutters, curbs, and vehicle

7

> parking strips of any material, or by grading, graveling, oiling, or otherwise improving the same, including the beautification thereof and including storm sewers or other street drainage and connections from sewer, water, or similar mains to curb lines.

The term "street" is defined for the relevant chapter as "any street, alley, or public way, or any part thereof." Minn. Stat. § 429.011, subd. 7 (2014).

Whether a statute has been properly construed is a question of law subject to de novo review. *Allen v. Burnet Realty, LLC*, 801 N.W.2d 153, 156 (Minn. 2011). "[W]ords and phrases are construed according to rules of grammar and according to their common and approved usage" unless they have a technical or acquired special meaning. Minn. Stat. § 645.08(1) (2014). For evidence of common and approved usage, we turn to dictionary definitions. *Larson v. Nw. Mut. Life Ins. Co.*, 855 N.W.2d 293, 301 (Minn. 2014).

Lino Lakes relies on the definition of "street" found in the *Oxford English Dictionary*, noting that the United States Supreme Court has recognized that dictionary as "one of the most authoritative on the English language." *Taniguuchi v. Kan Pac. Saipan, Ltd.*, 132 S. Ct. 1997, 2003 (2012). The *Oxford English Dictionary*, as cited by Lino Lakes, defines "street" as: "a paved road, a highway." *Oxford English Dictionary* 874 (2d ed. 2007). Moreover, *Black's Law Dictionary* defines "street" as "a road or public thoroughfare used for travel in an urban area, including the pavement, shoulders, gutters, curbs, and other areas within the street lines." *Black's Law Dictionary* 1557 (9th ed. 2009). Rehbein contends that "[t]he more logical analysis would be to compare the dictionary definition of the word 'interchange' with the dictionary or the statutory definition of the

8

word 'street,'" which he reports to be: "a road junction designed so that traffic streams do not meet."

Upon surveying the common usage and statutory definition of the word "street," we conclude that the interchange project at issue qualifies as an improvement to a street under Minn. Stat. § 429.021, subd. 1. CSAH 14, the main east/west street stretching across Lino Lakes, is a street. And it does not cease to be a street where it crosses I-35E at the interchange. Thus, we conclude that the district court properly determined that: "To the extent that bridge replacement or ramp construction is not specifically delineated by statute does not prevent these improvements from being categorized according to their true function, as street improvements."

Moreover, Minnesota caselaw supports special assessments for larger street-related projects. *See, e.g.*, *Vill. of Edina v. Joseph*, 264 Minn. 84, 87, 102, 119 N.W.2d 809, 812, 820-21 (1962) (affirming assessment for street improvements along one of city's "main . . . traffic arteries"); *EHW Props. v. City of Eagan*, 503 N.W.2d 135, 138-39 (Minn. App. 1993) (affirming special assessment where city widened existing roadway to improve access to "major arterial roadway"). Thus, even if a street-related project is regional in scale or larger than a typical municipal street, it can be properly financed by special assessments.

Because of the foregoing caselaw and in the absence of a persuasive reason to exclude interchanges from the statutory category of "any street," we conclude that Minn. Stat. § 429.021, subd. 1, authorized Lino Lakes to finance the interchange project with a special assessment.

**Special Benefit**

Rehbein argues that even if Lino Lakes was authorized to impose an assessment for the interchange project, the district court erred in concluding that his parcels received any special benefit from the project. He contends the district court erred because the benefits conferred by the reconstruction of the freeway interchange are general, not specific in nature. We disagree.

A local improvement confers a special benefit on private property if it "benefit[s] the property on which the cost is assessed in a manner local in its nature, and not enjoyed by property generally in the city." *In re Burnsville*, 310 Minn. 32, 39, 245 N.W.2d 445, 449 (1976). A municipality may not impose a special assessment that exceeds the special benefit. *Carlson-Lang Realty*, 307 Minn. at 369, 240 N.W.2d at 519. "Special benefit is measured by the increase in market value of the land owing to the improvement." *Id.*

Rehbein argues that the Minnesota Supreme Court expressly rejected a claim that a freeway interchange confers special benefits on land in its vicinity in *Mattson v. Colon*, 292 Minn. 189, 194 N.W.2d 574 (1972). We disagree.

In *Colon*, the issue before the supreme court was:

> Whether, when a portion of a farm is acquired by the state for the construction of a diamond interchange forming a portion of an interstate highway, absent evidence of an actual change in the physical characteristics of the property remaining, evidence as to the remaining property's enhanced value occasioned by its proximity to the interchange and its adaptability to a higher, better, and more profitable use creates a question of fact for the jury on the issue of special benefits.

292 Minn. at 190, 194 N.W.2d at 575 (quotations omitted).

10

The *Colon* court held that the freeway interchange at issue did not confer any special benefits, so it need not determine whether the benefits should offset the condemnation award. *Id.* at 199, 194 N.W.2d at 580. The supreme court reasoned that the condemnee does not acquire any vested right in the increased traffic and that a subsequent traffic diversion could deprive him of the gain without creating any right to compensation. *Id.* at 198, 194 N.W.2d at 579.

We conclude, as did the district court, that because *Colon* is not a special-assessments case, it is not controlling here. Moreover, its persuasive value is limited because, unlike the parcel in *Colon*, Rehbein's parcels do not simply benefit because of the increased traffic from an interchange project. Lino Lakes presented testimony that Rehbein was pursuing development on the Clearwater Creek parcel that would have been stalled until the failing interchange could be reconstructed, which the Minnesota Department of Transportation did not have plans to do until 2020. Thus, although the interchange may benefit the public at large, it conferred a special benefit to Rehbein's parcels because of the role it played in their potential development.

Rehbein also argues that, even if his parcels received a special benefit, the benefit was less than the amount of the assessment. We disagree. In challenging the district court's findings regarding appraisal methods, Rehbein contends that the district court erred in crediting the testimony of the city's expert witnesses and by giving more weight to the city's evidence regarding whether further development would have been allowed without the interchange project. But the weight and credibility of the expert testimony was for the trier of fact to determine. *DeSutter v. Twp. of Helena*, 489 N.W.2d 236, 240 (Minn. App.

11

1992), *review denied* (Minn. Sept. 30, 1992). And this court does not reassess the experts' opinions on appeal. *Id*. Rehbein has failed to show that the district court erred.

**Temporary Access Road**

We reject Rehbein's argument that Northern Lights Boulevard could not be a special benefit because it could be, and was, removed at the discretion of the county. In evaluating a special assessment, a court must examine the impact that the specific project had on the assessed properties and the value of those properties immediately before and immediately after the project. *Carlson-Lang Realty*, 307 Minn. at 369, 240 N.W.2d at 519. Because on the date of the evaluation Northern Lights Boulevard was in place providing access to Clearwater Creek, the district court did not err in finding that it conferred a special benefit to Rehbein's properties.

**Affirmed.**