### Harry M. Howe et al v. State Highway Board
[187 A.2d 342]

November Term, 1962

Present: Hulburd, C. J., Holden, Shangraw, Barney and Smith, JJ.

Opinion Filed January 2, 1963

*Latham & Eastman* and *Robert P. Davison, Jr.* for the plaintiffs.

*Richard M. Finn* for the defendant.

**Hulburd, C. J.**   In a land condemnation case, sometimes the taking results in adding value to the remaining property of the owner.   If so, when does this reduce the damages he is entitled to recover for the land taken?   The answer to the question is to be derived from a consideration of 19 V.S.A. §221(2) as applied to a given situation. The statute referred to reads as follows: ". . . The added value, if any, to the remaining property or right therein, which inures directly to the owner thereof as a result of such taking or use, as distinguished from the general public benefit, shall be considered in the determination of damages."   The foregoing statute is much more specific than the corresponding section which is applicable to the laying out of highways by local authorities.   This is to be found in 19 V.S.A. §833 and reads as follows:

> "In estimating the damages sustained by a person owning or interested in lands, by reason of laying out or altering a highway, the benefits which such person may receive thereby shall be taken into consideration."

With the controlling statutory provision being as we have first quoted it, we now turn to the situation which this particular case presents.   It grows out of condemnation proceedings in which the State Highway Board took a portion of the appellants' premises upon which to construct a part of the interstate highway system. Prior to the taking, the appellants were the owners of approximately ninety acres of land upon which there was a residence, garage, motel

and a number of cabins, which were operated under the name of "The Checkered House." This property was located about a mile and a half northwest of the village of Richmond on Route #2, so-called. The State took by condemnation approximately 9.3 acres from the appellants, which included 9.2 acres south of Route #2, upon which four cabins were located, and one-tenth of an acre on the north side of Route #2.

Early in the trial, on the question of damages, it was brought out without objection that the property of the appellants was bounded on the east by the right-of-way of the Central Vermont Railroad and that just beyond the railroad track an interchange would be constructed in connection with the new highway. The existing route #2 was not to be changed as to location and would continue past the appellants' property as before. By means of the interchange, traffic would be able to get off the interstate highway in either direction and so there would be access to the appellants' property from all directions. Although no part of the interchange was to be constructed on the appellants' land, it was nearby, being just across the railroad tracks and some 350 feet from the house on the appellants' property. All of the foregoing facts can be gathered from the testimony of an engineer who testified about them without objection. After they had come into the evidence, the state then offered in connection with the witness' testimony a drawing which showed the interchange with reference to the railroad and the Checkered House. The appellant objected saying, "We object to this on the ground that the point of this case is what was the value of this property before and after the taking relating to December 28, 1960; that whether there is an interchange or no interchange or what effect it may have at some rather indefinite time in the future has no particular bearing on the materiality of this case and we, therefore, object to it."

The court overruled the objection and admitted the drawing in evidence. This was error, the appellants claim.

■ If there was anything harmful about the exhibit, the harm had already been done by the engineer's previous testimony which had come in without objection. The drawing merely put before the jury in graphic form what they had already heard in the engineer's testimony. Prejudicial error cannot be predicated upon a court's

ruling in such circumstances. *Leonard* v. *Henderson,* 118 Vt. 29, 37, 99 A.2d 698.

However, this does not put an end to the problem. It was to come up again in another way. This was in connection with the trial court's instructions to the jury. After referring to the various opinions of the before-and-after value of the property, the court went on to tell the jury, "There is another matter we wish to call to your attention and that is a provision in the law, and in this same law we are talking about, having to do with condemnation proceedings and that law considers added value, if any, to the remaining property which might directly benefit the plaintiffs as a result of the taking of this land and I refer, of course, to the interchange to be constructed, as the evidence reveals and as shown by the exhibits. You should take this phase of the overall construction project into consideration and decide whether this interchange will be of benefit to the remaining property or a detriment to it."

Counsel for the appellants excepted to this charge to the jury as follows, "I have but one exception and that is to instruction giving them the opportunity to consider the added value to the remainder of the property because of the interchange. I object and except to that for the reason that this is a benefit which is general, general to the property in the area and nothing should be taken into individual consideration of one owner. The State is not liable for directing traffic away; certainly the owners should not have money taken away from them which, by some chance comes their way."

We are bound to say that the appellants' exception is well taken. The instructions of the trial court were faulty when looked at from three different aspects. First, the trial court's charge did not confine the jury's consideration, in accordance with the statute, to those benefits inuring directly to the landowner as distinguished from those accruing to the general public. Instead, it left the matter without requiring the jury to differentiate as to the nature of the benefits. There was error in this.

Secondly, the court, had it made this distinction, should have gone on to provide the jury with some idea of how they were to go about distinguishing between the two kinds of benefits. Admittedly, this is a very difficult thing to do. There are, however, certain guiding principles. This is so even though whether a given benefit con-

ferred by a public improvement of condemned land is general or special must be determined largely by the circumstances of the particular case. *Crawford* v. *Central Nebr. Public Power & Irr. Dist.,* 154 Neb. 832, 49 N.W.2d 682. In any event, the jury should have been made to understand that special benefits are to be differentiated from general benefits by their nature or kind rather than by their degree or amount. In recognition of this fact it has been said that benefits do not cease to be general merely because the benefits to the property in question are greater in degree than to the property of some of the other owners. *United States* v. *Alcorn,* 80 F.2d 487.

Some cases are relatively obvious. Thus, where a ditch was constructed in connection with condemned land so that the remaining land benefitted by the drainage, a "special" as contrasted to a "general" benefit resulted and the landowner's damage could properly be found to be diminished as a consequence. *Crawford* v. *Central Neb. Public Power & Irr. Dist., supra.* Other situations are not so simple. See 145 A.L.R. 55 for a collection of various cases showing the divergent views of the courts on this subject. See also Nichols, Eminent Domain, 3rd ed. Vol. 3, §8, 6203; Orgel, Valuation under Eminent Domain, page 46; Jahr, Eminent Domain, p. 147.

Our problem in Vermont is even more complex. A new element has been added. We are almost unique in that our statute includes business loss as an element of damage. This added factor inevitably results in further complication, while at the same time it reduces the usefulness of decisions from other jurisdictions.

It is apparent in the present case that the "benefits," if there were any, would have to relate to business loss. No improvement to the remaining land itself is claimed to have resulted. In fact, the source of the benefit, if such it was, namely the interchange, was not on the landowners' land at all, but was separated from it by the railroad right-of-way. This, in itself, is an important circumstance.

■ We think that whenever a trial court submits a question of this sort it should, first of all, call the jury's attention to all the provisions of the statute. By so doing, the rule embodied in the legislative language would begin to take on meaning. The legislative intent is clear enough. The lawmakers have in mind that if a landowner's compensation for land taken were to be reduced on account of a benefit received by him in common with the general public, then he, in

effect, would be compelled to pay for such benefit while his neighbors in the area, who contributed no land to the project, would receive the same benefits without charge. Compare *Adams* v. *St. Johnsbury & L. C. R.R. Co.,* 57 Vt. 240, 249. It is only when the landowner has directly received a special benefit as distinguished from a general public benefit that the damage going to him should be reduced.

We think that if this basic principle is put before the jury, they will be able to apply it to the particular facts of a given case and then say whether or not the benefit, if any, is one which accrues directly to the landowner as a result of the taking or use as distinguished from a general public benefit. We believe that the determination required is one which a jury is particularly well suited to make and that if they are made to see the underlying reasoning of the statute, they will ordinarily give it proper effect.

Of course, there may be a case in which it may be said that there is no evidence justifying a submission to the jury at all of the question of special benefits under the statute. The appellants claim that this is such a case and that the jury should not have been allowed to consider the question even under proper instructions. This brings us to the third and final aspect of the trial court's submission. There is no claim by the Highway Board here but that if the appellants received a special benefit in connection with the condemnation, it was from the interchange; hence it must arise, if at all, from traffic possibilities with reference to the appellants' place of business. At the outset, it should be noted that there is no evidence that the interchange was constructed with the appellants especially in mind. It was constructed for the convenience of the general public just as the highway itself, of which it is a part, was constructed for that purpose. Benefits attached to the currents of public travel are not vested rights and so diversion of traffic does not furnish a ground for compensation. *Nelson* v. *State Highway Board,* 110 Vt. 44, 53, 1 A.2d 689, 118 A.L.R. 915. By the same token, it follows as an inescapable corollary that a potentially increased flow of traffic is not to be regarded as a special benefit. *Demers* v. *Montpelier,* 120 Vt. 380, 389, 141 A.2d 676. In the present case there is no reason why any one who wished to go into the motel business could not construct the necessary buildings at any other nearby point as accessible to the interstate highway as the appellants. By so doing, such newcomers could avail themselves of accessi-

bility without being subject to a charge, as the appellants would be where such benefits are deducted from their compensation. Thus, it was held in *Childs* v. *New Haven R. R. Co.*, 133 Mass. 253, that the construction of a public work which will create a greater demand for a particular commodity is not a special benefit, even to land well adapted to supplying the commodity, because all other similar lands would be benefitted in like manner.

It follows that the instructions of the trial judge in this particular case were in error, first because he made no distinction between general and special benefits; second, because he failed to give the jury the reasoning underlying the distinction between general and special benefits; and finally because, by his instructions, he allowed the jury to consider the interchange, by and of itself, as a special benefit to the appellants, and this where there was no evidence to show the non-existence of other suitable motel sites in sight of and in the general area of the interchange. The erroneous submission was prejudicial to the appellants and stood in the way of a verdict allowing just compensation for land taken. This necessitates a reversal.

*Judgment reversed and cause remanded.*