## Thomas A. Farrell v. State Highway Board

[194 A.2d 410]

May Term, 1963

Present: **Hulburd, C. J., Holden, Shangraw, Barney and Smith, JJ.**

Opinion Filed October 1, 1963

*Yandell, Page & Noble* and *Bernard J. Leddy* for the plaintiff.

*Joseph E. Frank* for the defendant.

**Hulburd, C. J.** This is a land condemnation case in which the trial court submitted to the jury the question of special benefits to the landowner's remaining property resulting from the taking. The jury

returned verdicts as follows: by special verdict No. 1, they found the value of the land taken to be $75,000.00; by special verdict No. 2, they found that the remaining property of the plaintiff had been damaged to the extent of $45,000.00; by special verdict No. 3, they found that the added value to the remaining property which inured directly to the owner as a result of the taking as distinguished from the general public benefit was $35,000.00; and lastly, by a general verdict, the jury found the plaintiff entitled to the sum of $85,000.00.

The plaintiff asked the trial court to set aside special verdict No. 3, and the general verdict to the extent that it was affected by special verdict No. 3, and that judgment be entered upon special verdicts No. 1 and No. 2, in other words, that judgment be entered for the plaintiff in the sum of $120,000.00 unreduced by the $35,000.00 of special benefits found by the jury in special verdict No. 3. The plaintiff sought this action from the court below because he claimed that there was no evidence tending to show that the remaining property had been benefitted in the manner required by the statute so as to make this benefit available in the reduction of damages. This aspect of damages is dealt with in 19 V.S.A. §221 (2) and reads as follows:

". . . The added value, if any, to the remaining property or right therein, which inures directly to the owner thereof as a result of such taking or use, as distinguished from the general public benefit, shall be considered in the determination of damages."

We had occasion to deal with this statute in the recent case of *Howe* v. *State Highway Board*, 123 Vt. 278, 187 A.2d 342. The opinion, however, had not been filed at the time of trial in the present case.

The situation to which the statute quoted above must be applied presents itself as follows. Prior to the taking, the plaintiff owned 548 acres of land situated in the area bounded by Shelburne Road on the west, Hadley Road on the north, and Swift Street on the south in South Burlington, Vermont. From this property 12.9 acres of vacant land and three culvert rights were taken on March 20, 1961 for use in constructing a spur of the Interstate Highway System which serves as a connection between the main route of the interchange easterly of Burlington and Shelburne Road, known as Route 7 approaching Burlington from the south. By use of the spur in question, traffic between

Rutland and Montpelier, and other points in that line of travel will be able to by-pass the city of Burlington. The land taken was a strip which included 425 feet of frontage along Shelburne Road, or about one-half of the plaintiff's frontage on this road. The taking extends back from Shelburne Road to the eastern boundary of the plaintiff's property thereby dividing the plaintiff's remaining land although an underpass under the state highway will permit a street to be developed from Swift to Hadley Road and thus allow a connection between the two segments of the plaintiff's remaining land. Since the new construction will constitute a limited access highway, there will be no frontage along it, the entire road being fenced off so that traffic may enter or leave only at the Shelburne Road junction; thus access to the plaintiff can be had only as it was before the taking from Shelburne Road, except that as to that it has been reduced about 50 percent by the loss of frontage in the taking.

What we have stated should sufficiently serve to make the general background clear. The Highway Board recognizes that the only evidence requiring review on this appeal is that on the subject of added value. We turn, therefore, directly to this phase of the case.

Altogether five witnesses testified as to value. Of these, three testified for the plaintiff. Two of them did not testify on the subject of added value at all. The third, Peter A. Hopkins, stated that he considered the subject of added value and found none due to the interchange on Shelburne Road.

The evidence of added value advanced by the state came from two witnesses. One was a J. Russell Thorne. He is a real estate appraiser of many years experience. His background includes a study of the effect on lot values by interchanges along the New York State Throughway. For purposes of his testimony in this case, he had available to him a "land economics study" of the area in question furnished to him by the State, including a study of two sales of lots within a block or two of the Shelburne Road interchange since the date of the taking. Thorne's testimony is rather extended and detailed, and it is not easy to summarize satisfactorily. To some extent the witness' own language is needed for a proper understanding of his opinion. We will attempt to reproduce those things necessary to a fair presentation of his testimony. It was his opinion that the plaintiff's northerly frontage, following the taking, appraised at

$104,214.00 before the taking, increased in value 50 percent or $52,000.00 after the taking. He stated, "I believe that that area, the land, because of the construction of this facility has increased in value 50 percent." He insisted, "I don't think it's a question of traffic. It's a question of how much somebody will pay for land adjacent to these facilities." And again he said, "What I'm considering is what I know people are. paying for this land since this thing is here." His testimony is uniformly consistent that it is "the facility," "the thing," that is we take it, the interchange, which gives rise, either directly or indirectly, to the increase in value. Thus he elaborates, "Well, I believe the fundamental reason, sir, is that the facility is put in there over which traffic, we should assume, would travel after it was constructed and this is· a limited access—controlled access highway—and you can only get off at certain spots and this as you say is the end of that—this interchange is the end to the interchange with Shelburne Road, and all of the northbound traffic comes off of this road. If they are in the mood to buy anything, they right away come on this property of Mr. Farrell's."

The foregoing is sufficient, we think, to make it clear why, in his opinion, the plaintiff's land has increased in value. He finds confirmation of his judgment, in this matter, he believes, in two sales of land across Shelburne Road from the plaintiff's property. These occurred about a year and a half after the taking of the plaintiff's property. One was almost directly across Shelburne Road from the plaintiff's northerly boundary; the other about a block southerly of the plaintiff's land. Both sales, he testified, showed a 50 percent increase, or better, in property value over what it was before the interchange was contemplated.

The defendant's other witness was Antonio Pomerleau. He is the owner of land immediately across Shelburne Road from the plaintiff's property. He testified that his land and all the other land in the vicinity of the interchange was increased by reason of its construction, that this increase extended for a distance of at least one-half or three-quarters of a mile on either side of this connection although diminishing "the further you go away." This increase in value, or benefit, in Mr. Pomerleau's opinion, was "predicated upon the fact that more traffic would be brought into the area by virtue of the construction of the road at that point."

It is the plaintiff's claim that the evidence of the defendant's witnesses, which we have just summarized, did not tend to show that the plaintiff was the recipient of special benefits as defined by the statute quoted earlier; in short, that the damages which the plaintiff has suffered should not be reduced by benefits which every one within a radius of a half mile or more is receiving to some degree without contribution. The plaintiff urges:

"The physical evidence confirms the view of these witnesses. It is clear that the Farrell property had no access to the interstate highway, as such. Its only access was to Shelburne Road and this access was reduced, not increased, as a result of the taking. If the interchange facility benefited the Farrell property, it did so by providing a better mode of transportation which was available to the general public and was, in no sense, peculiar to the Farrell property. If the new facility directed traffic to the plaintiff, it had to direct the same traffic to others in the vicinity. If this improved mode of transportation had, as claimed, the effect of increasing the market value of the Farrell property, it likewise had the effect of increasing the market value of all other properties in the vicinity." This, of course, was the basic reasoning of *Howe* v. *State Highway Board*, 123 Vt. 278, 187 A.2d 342.

To meet the plaintiff's argument the defendant Highway Board resorts to two major lines of reasoning: first, it tries to escape from the Howe case by saying that in the present case the increase in value arises from "access" rather than "traffic," and second, that the Howe case was not sound in its declaration of the legislative intention.

The defendant Highway Board's analysis of the evidence seeks to avoid use of the word "traffic." This is because in the Howe case we reiterated an earlier holding that a potentially increased flow of traffic is not to be regarded as a special benefit. Accordingly, it is the defendant's position that the increased value arises not from "traffic" but from improved "access." Taking counsel for the Highway Board at his own word, and his own word is "access," the record does not support his contention. It discloses no improved "access." No new way of getting on to the plaintiff's land has been furnished by the construction. Actually, with the loss of frontage, the plaintiff is left with fewer points of entry. The spur of the interchange, where it crosses the plaintiff's property, is fenced off, thus denying an oppor-

tunity to pass on to the plaintiff's property directly. Such an access could have been a special benefit. Indeed, as Mr. Thorne testified, the new road is a controlled access highway. In short, the evidence is not susceptible of a construction under which the plaintiff's benefit can be ascribed to improved "access."

Witness Thorne makes an effort of his own to get away from the word "traffic." He says that it is not a question of traffic, but of how much somebody will pay for land adjacent to these facilities. But, if we take this approach, this is an escape based on indirection. And under the statute we are only concerned with added value "which inures directly to the owner." Upon final analysis, Thorne's testimony provides no explanation for added value but that which arises from traffic and in the long run he comes to that statement himself.

We turn now to the contention of the Highway Board that we mistook the legislative intention in dealing with the special benefits statute, 19 V.S.A. §221(2), in the Howe case. We think the board takes this position because it has overlooked the paramount legislative intention which that body had when it enacted the statute in question. We are convinced that the overriding purpose of the legislature in enacting a new condemnation law was to see to it that the landowner should receive fair treatment when his land was taken. To this end and in keeping with this purpose, it provided for damages for business loss, something which almost no other jurisdiction had set out to do. The whole spirit of the act was to see to it that the landowner would get just treatment and fair compensation for the land taken away from him.

It is against this background that we must arrive at how the legislature intended the special benefit statute with which we are concerned here should apply. Take the testimony in this very case. Across Shelburne Road from the plaintiff's land is an owner who enjoyed a better than 50 percent benefit by reason of the coming of the new construction. He put this amount of profit in his pocket, all without deduction or contribution of any kind. On the other hand, if the interpretation urged upon us by the Highway Board is adopted, the plaintiff will have taken out of his pocket the very benefit which the man across the street has been allowed to keep. We cannot believe that this was the sort of treatment which the legislature was seeking to insure in the name of fairness. It is only when one is willing to

recognize neighborhood losses that one can fairly lay claim to neighborhood benefits. The two are correlative. *Demers* v. *Montpelier,* 120 Vt. 380, 389, 141 A.2d 676; *Howe* v. *State Highway Board,* 123 Vt. 278, 187 A.2d 342. Nowhere in the brief of the Highway Board has counsel addressed itself to the proposition of: what is fair? With this, we believe the legislature was primarily concerned. The underlying logic of *Adams* v. *St. J. & L.C. RR Co.,* 57 Vt. 240 is to this effect. The Highway Board's whole theory of "neighborhood benefits" does not assort with the legislature's controlling intention. It does not assort well with the generally recognized doctrine that special benefits are to be differentiated from general benefits by their nature or kind rather than by their degree or amount. The general good arising from a construction of this sort naturally is not felt in the same degree by all members of the public. A general benefit is nonetheless general merely because some enjoy it to a greater degree than others of the public at large. In this very case the evidence is that all owners within a one-half to three-quarters of a mile radius enjoyed the same benefits in varying degrees.

■ By requiring that the benefit be peculiar to the land directly affected, we are not insisting that such benefit be "unique." Uniqueness was not set forth as a criterion in the Howe case and we have no trouble accepting a case like *Crawford* v. *Central Neb. Public Power & Irr. District,* 154 Neb. 832, 49 N.W.2d. 682, 685, where the benefit "inures *directly* to the owner." The Howe case cited this very case with approval. Our statute specifies that a special benefit is one which inures directly to the owner, as well as being one which can be distinguished from a general public benefit.

We are not disposed to change or modify the law of the Howe case and, this being so, as the defendant virtually acknowledges, there was no basis for a finding of special benefits in this case. The damage that the plaintiff has suffered is not subject to a reduction for special benefits and the special verdict (No. 3) cannot stand.

■ In addition to the main question we have just discussed, the matter of interest in the verdict gave rise to a further question. The defendant Highway Board claims the trial court was in error when it computed interest on the amount of the verdict and included it in the judgment order. The defendant's argument runs that interest may

not be added by the trial court where it has not by its instructions reserved that determination to itself. Where no such reservation has been made, and none was here, the defendant argues that we must presume that the jury has already included interest in its verdict. The defendant cites a number of cases bearing on this proposition. Without dealing with them individually, it is enough to say that the defendant has not pointed out to us in the record where the necessary data appears upon which the jury could have proceeded to make a calculation in this regard. See 19 V.S.A. §230. In such circumstances all basis for a presumption that the jury has included interest in its verdict has disappeared. We do not presume error. We think the only feasible method of dealing with this problem is for the trial court to compute and enter up interest in connection with its judgment. Such, we understand, has been the general practice of trial courts in land condemnation cases. We are satisfied that the court below proceeded on this basis and the plaintiff, in volunteering to draw the judgment order including interest, as it did, recognized that the court had so proceeded. The round figures of the verdict leave little doubt that the jury had the same idea as well. They lacked the necessary information to make any interest computation. It would be unreasonable to assume that they did.

Under the circumstances, we are setting aside special verdict No. 3 and remanding the case so that the court below may enter judgment based on special verdicts No. 1 and No. 2 for damage based on $120,000 plus interest computed to the date of its entry. Were we to enter judgment here, a possible motion for reargument might render the computation useless and cumbersome. Once judgment has been entered with interest up to the date of judgment, the judgment itself will become a basis for such other interest as may accrue before satisfaction.

*Special verdict No. 3 is set aside and cause remanded that trial court may strike old judgment and enter new judgment in accordance with special verdicts No. 1 and No. 2, together with such interest as may have accrued at the time of entry of new judgment.*