467 P.2d 251

Melvin R. TAYLOR and Lucille Taylor, husband and wife, Appellants,

v.

STATE of Arizona ex rel. Justin HERMAN, Director, Arizona Highway Department, Appellee.

No. I CA–CIV 1076.

Court of Appeals of Arizona, Division 1.

April 6, 1970.

Donovan E. Speaker, Phoenix, for appellants.

Stevens & Leibow, by Howard P. Leibow, Phoenix, for appellee.

HOWARD, Chief Judge.

This case involves the issue of whether or not the jury in a condemnation action should have been instructed as to special benefits.

The appellee, State of Arizona, instituted an action to condemn the subject property, located on both sides of Arizona Highway 84 approximately one and a half miles southeast of Gila Bend. In the "before" situation, the property had frontage of 2,000.04 feet on the easterly side of Highway 84 and 2,600 feet on the westerly side.

The "taking" was required for construction of a portion of Interstate 8, a controlled access highway, running from Casa Grande to Yuma. As a result of the construction, two small triangles of land were taken on the southeasterly and southwesterly corners of the appellants' property, comprising a total acreage of 3.1 acres, and an interchange known as East Gila Bend Interchange was constructed which utilized the old Highway 84 as an access road to and from the freeway. In the "after" situation both eastbound and westbound traffic on Interstate 8 could reach the subject property via the East Gila Bend Interchange. As a consequence of the construction, appellants' property abutting the interchange was restricted from access to old Highway 84 for a distance of 515 feet on the westerly side and 697 feet on the easterly side.

The State's two appraisers testified that the property would receive special benefits as a result of the condemnation because the creation of the interchange adjacent to it raised the highest and best use of the property, from that of speculative desert property to commercial purposes. The market value of the property was therefore enhanced. Both witnesses testified they had investigated the general freeway system in Arizona and discovered that sites adjacent to entrance and exit ramps leading to limited access highways were especially desirable. Such sites were particularly attractive to motel, filling station and truck stop operators because of the limited number of interchanges constructed in the system.

One of these witnesses testified that his investigation of the East Flagstaff Interchange showed that land selling in the "before" situation from $1,000.00 an acre at the interchange site was selling from $75,-000.00 to $100,000.00 for half-acre to three-fourths acre sites in the "after" situation. Both witnesses testified that the Interstate 8 construction would specially benefit the subject property, which ran for a considerable distance on the highway, and also property belonging to a Mr. Holt

which he had purchased as a Texaco filling station site from Mr. Taylor prior to the condemnation. The Holt property, according to them, would be specially benefited by the interchange although no part of it was being taken by the State. The appraisal witness for appellants testified that in his opinion there were no severance damages.

The case was tried to a jury which specifically found the damages for the property taken to be $950.00 and severance damages to be $28,600.00. It specifically found the property specially benefited in the sum of $25,100.00 which it subtracted from the severance damages and therefore arrived at the total sum of $3,500.00.

Appellants contend that the evidence showed the benefits to be general and not special, hence it was improper to instruct the jury as to special benefits.

### OFFSET OF BENEFITS

Art. 2, § 17 of the Constitution of Arizona, A.R.S., provides in part:

"* * * No private property shall be taken or damaged for public or private use without just compensation having first been made, or paid into court for the owner, and no right of way shall be appropriated to the use of any corporation other than municipal, until full compensation therefor be first made in money, or ascertained and paid into court for the owner, irrespective of any benefit from any improvement proposed by such corporation * * *."

Pursuant to this constitutional provision, the legislature passed A.R.S. § 12–1122, subsec. A which states that the fact-finder shall ascertain and assess:

"3. How much the portion not sought to be condemned and each estate or interest therein will be benefited separately, if at all, by construction of the improvement proposed by plaintiff. If the benefit is equal to the damages assessed under paragraph 2 of this subsection, the owner of the parcel shall be allowed no compensation except for the

value of the portion taken, but if the benefit is less than the damages so assessed, the benefits shall be deducted from the damages, and the remainder shall be the only damages allowed in addition to the value."

Although this statute does not distinguish between special and general benefits, the general rule, followed in Arizona, is that only special benefits may be deducted from severance damages. Phoenix Title and Trust Co. v. State ex rel. Herman, 5 Ariz.App. 246, 425 P.2d 434 (1967).

The most satisfactory distinction between general and special benefits is that general benefits are those which arise from the fulfillment of the public object which justified the taking while special benefits are those which arise from the peculiar relation of the land in question to the public improvement. Nichols on Eminent Domain § 8.6203 at 66 (3rd ed.).

There is probably more judicial discord as to what is or is not a special benefit than in any other area of the law of eminent domain. Where there is an actual physical improvement to the property, such as the draining of a swamp, it is easy to see a special benefit. It is equally easy to recognize, at the other end of the spectrum, a general benefit such as an improved system of highways, since everybody in a community benefits from such improvement. The difficulty lies in the amorphous grey area between these two extremes. We believe that the following benefits are "special" benefits, therefore, offsetable:

1) The unique benefit—a benefit not shared by any other parcel,[1] and

2) The special benefit—a benefit which may be shared by other parcels along the roadway similarly situated.[2]

We would classify as non-offsetable or "general" benefits the following:

1) The local or neighborhood benefit —a benefit shared with other parcels not abutting the road but in the near vicinity,[3] and

2) The general or community benefit—a benefit shared with other parcels in the community arising from the fulfillment of the public object which justified the taking. Phoenix Title and Trust Co. v. State, supra.

Appellants argue that since the Holt property, no part of which was taken by the highway construction, will be benefited by the interchange, the benefit is no longer "special" but "general." Their authority for this contention is the case of Phoenix Title and Trust Co. v. State, supra. In Phoenix Title and Trust Co. v. State, supra, the court believed that the testimony as to benefits indicated a general benefit since all property owned in the locality or city, whether they abutted the improvement or not, would benefit in the manner testified to by the witness.

To support their position that a benefit is not offsetable if it is enjoyed by others whose property is not taken, the appellants quote from Phoenix Title and Trust Co. v. State, supra, which quotes from State ex rel. State Highway Commission v. McCann, 248 S.W.2d 17 (Mo.App.1952) at 22:

"A 'general benefit,' as applied to a person whose property is being condemned for a highway, is one common (though it may be in a greater or lesser degree) to all other landowners in the vicinity of such road, including those whose land is not taken as well as those whose land is partly taken. * * *"

This quote is from the case of State ex rel. State Highway Commission v. Mc-

1. Lipes v. Hand, 104 Ind. 503, 1 N.E. 871 (1885); Sullivan v. North Hudson County R. Co., 51 N.J.L. 518, 18 A. 689 (1889); Washburn v. Milwaukee & L. W. R. Co., 59 Wis. 364, 18 N.W. 328 (1884).

2. State By and Through State Highway Commission v. Bailey, 212 Or. 261, 319 P.2d 906 (1957); State ex rel. State Highway Commission v. Vorhof-Duenke Co., 366 S.W.2d 329, 335 (Mo.1963).

3. Louisiana Highway Commission v. Grey, 197 La. 942, 2 So.2d 654 (1941).

Cann, supra, a 1952 decision of the Missouri Supreme Court. Thirteen years later, however, in State ex rel. State Highway Commission v. Vorhof-Duenke Co., supra, the Missouri Supreme Court in its opinion quoted from Randolph Eminent Domain § 270 at 251:

"* * * But it is to be noted, that an advantage is none the less a special benefit because it is conferred upon all the tracts of land upon which the public work is constructed. Indeed, a benefit may be special, *although it is conferred also upon land not taken. * * *"* (Emphasis added.)

We believe that fundamental fairness dictates that the public, which ultimately is bearing the cost of construction, be able to recover part of the cost by charging for benefits received. The fact that one whose land is not taken has a windfall is no reason for the condemnee to also have a windfall.

## PROXIMITY OF INTERCHANGE AS A SPECIAL BENEFIT

Proximity to an interchange can result in a special benefit. In State ex rel. State Highway Commission v. Clevenger, 365 Mo. 970, 291 S.W.2d 57 (1956), the appraisal witness for the State testified that in his opinion there were special benefits to the remainder because of the limited number of access sites available. The court held that the evidence of the presence of a new roadway, the modes of access provided, and the reasonable probable uses of the remaining property, may and should be considered in determining the question of special benefits.

In the case of Petkus v. State Highway Commission, 24 Wis.2d 643, 130 N.W.2d 253 (1964), the State's appraiser testified that the highest and best use before the taking was for agricultural purposes while in the "after" situation, because of proximity to the interchange, the highest and best use was for service facilities for the traveling public. The trial judge instructed the jury that a special benefit was one that en-

hanced the value of the land by improving its physical condition or adaptability for use. The appellate court expressed its approval, stating:

"* * * We agree that the definition of special benefits should be extended to include enhanced value because of more advantageous adaptability for use. Land which by reason of its proximity to a no-access highway interchange is enhanced in value because its highest and best use, assuming the completion of the public improvement, is immediately favorably changed or its potential for favorable change in use appears by reasonable probability to be imminent, is specially benefited."

In the case of Hietpas v. State, 24 Wis. 2d 650, 130 N.W.2d 248 (1964), the landowner argued that special benefits must be restricted to actual physical improvements of the land. In this case part of the property was located on one quadrant of the interchange as a result of the taking. The witness for the State thought that prior to the taking there was little residential potential but that afterward the land located on the interchange had commercial value. The court rejected the argument of the landowner and reiterated the proposition that enhanced value because of more advantageous adaptability of use can cause a special benefit.

## SPECULATIVE BENEFITS

Appellants contend that the evidence in this case as to special benefits is speculative and remote, therefore not offsetable. The rule that special benefits may not be speculative is not a definition of special benefits, but is merely an application of the universal rule denouncing speculative evidence as proof of the value of land. State By and Through State Highway Commission v. Bailey, supra. Only such benefits as are so reasonably probable as to have an effect on the present value of the land may be shown. United States v. 2,635.04 Acres of Land, 336 F.2d 646 (6th Cir. 1964); People v. McReynolds, 31 Cal.App.2d 219, 87 P.2d 734 (1939).

**32**

Appellee's witness, appraiser R. Veldon Naylor, testified that special benefits would accrue to the subject property because it was the first property fronting on the northerly access point of the East Gila Bend Interchange.

Appellee's witness Robert Temple expressed his opinion that the subject property was specially benefited in the amount of $23,400.00. He stated that in the "before" situation it had one commercial site other than the parcel sold to Mr. Holt, which sale was consummated with knowledge of the interchange and was therefore reflective of the increased value of the property in the "after" situation. He testified that in the "after" situation an additional commercial site was found on the west side of the highway because of its proximity to the interchange. He further indicated this interchange was one of the two interchanges on either side of the town of Gila Bend on Interstate 8, and that the southerly side of the East Gila Bend Interchange, since it fronted upon public domain, could not be used for commercial purposes. He evaluated the nature of the benefits accruing to this property as "special" by reason of it being the first parcel fronting on the interchange; its highest and best use had been enhanced by the additional commercial site; and the present of the·requisite factors for application of the doctrine of special benefits.

■ In addition to the evidence of the increased business activity and land values at other interchanges in the State, there was also evidence that the Holt sale would not have been financed by Texaco were it not for the interchange. Veldon Naylor testified that Mr. Holt told him that he had bought the property because of the interchange. Although Holt, on deposition, denied this, it was for the jury to decide whether or not the Holt sale was influenced by the interchange.

■ The burden of establishing special benefits rests upon the condemning authority. Territory of Hawaii v. Mendonca, 46 Hawaii 83, 375 P.2d 6 (1962); State ex rel. Department of Highways v. Pinson, 66 Nev. 227, 207 P.2d 1105 (1949); Kirkman v. State Highway Commission, 257 N.C. 428, 126 S.E.2d 107 (1962); Nichols on Eminent Domain § 8.62[1] at 59 (3rd ed.). We believe that the evidence in this case as to special benefits was within the realm of a reasonable probability. The State therefore sustained its burden of proof and the trial court was correct in submitting the issue of special benefits to the jury.

The judgment is affirmed.

KRUCKER and HATHAWAY, JJ., concur.

NOTE: This cause was decided by the Judges of Division Two as authorized by A.R.S. § 12–120, subsec. E.