480 P.2d 1013

**DEFNET LAND & INVESTMENT CO., an Arizona corporation, et al., Appellants,**

v.

**STATE of Arizona ex rel. Justin HERMAN, Director, Arizona Highway Department, Appellee.**

**No. 1 CA–CIV 1271.**

Court of Appeals of Arizona, Division 1.

Feb. 22, 1971.

Rehearing Denied March 24, 1971.

Review Denied April 20, 1971.

Hughes, Hughes & Conlan, by John C. Hughes, Phoenix, for appellants.

Gary K. Nelson, Atty. Gen., by H. K. Mangum, Sp. Asst. Atty. Gen., Flagstaff, for appellee.

HOWARD, Judge.

The first trial in this action resulted in a reversal by the Arizona Supreme Court. Defnet Land & Investment Co. v. State ex rel. Herman, 103 Ariz. 388, 442 P.2d 835 (1968). This is an appeal from the retrial and presents the following questions: (1) Did the evidence show a special benefit? (2) Did the State's expert appraiser lay a sufficient foundation for its evidence as to special benefits? (3) Is evidence of a special benefit admissible without such issue being pled or raised in pretrial procedures?

This condemnation grew out of the conversion of U. S. 66 to U. S. Interstate 40 between Williams and Flagstaff, Arizona. The appellants shall hereinafter be referred to as the defendants and the appellee as the plaintiff or the State. Defendants' property before the taking consisted of a single

tract of 120.75 acres without improvements. 1,980 feet of tract fronted on Highway 66. The State took 13.10 acres from the north end of the tract, severing one parcel of .90 acre from the remaining acres. The new highway, Interstate 40, is a controlled access highway. About 200 feet to the west of defendants' property an interchange was constructed. The south tract had access to Interstate 40 only by means of the interchange and a county road leading to it, whereas, as stated before, it had direct access from 1,980 feet of frontage on Highway 66.

The jury returned a verdict assessing damages for the taking in the sum of $13,015.00 and severance damages in the sum of $14,310.00 against which was set off special benefits in the sum of $10,000.00.

Defendants appeal from the judgment entered on the jury verdict and an order denying defendants' motion for a judgment N.O.V. and/or for a new trial.

Plaintiff's appraiser valued the total property in the before situation in the sum of $88,617.00. He valued the take in the sum of $12,314.00, testified to severance damages in the sum of $1.00 and special benefits in the sum of $15,321.00.

Defendants' expert witness testified to the take in the sum of $25,400.00, severance damages in the sum of $41,572.00 and no special benefits.

EVIDENCE OF SPECIAL BENEFITS

It is defendants' position that no special benefits can arise as a result of proximity to an interchange on a controlled access highway.

While the briefs were being prepared in this case, this court decided the case of Taylor v. State ex rel. Herman, 12 Ariz. App. 27, 467 P.2d 251 (1970). In that case we stated what types of benefits could be offset against severance damages and defined general and special benefits. We also held that proximity to an interchange can result in a special benefit. We further ruled that land, which by reason of its proximity to a no access highway interchange, is enhanced in value because its highest and best use, assuming the com-

pletion of the public improvement, is immediately favorably changed or its potential for favorable change in use appears by reasonable probability to be imminent, is specially benefited.

The plaintiff's appraiser testified in the case sub judice that 16.84 acres of land, which previously had a highest and best use for investment purposes, in the after situation had a highest and best use for commercial purposes and a consequential increase in value because of its proximity to the interchange.

Although acknowledging the existence of the case of Taylor v. State, supra, defendants argue that the interchange does nothing more than direct traffic to their property and that such traffic, being merely an incident of streets and highways, cannot be considered as an element of benefits to the property. They therefore claim that it is incorrect to include the movement of the traffic on the highway as an element of special benefit. In support of this proposition defendants cite the following cases: State ex rel. State Highway Commission v. Parker, 387 S.W.2d 505 (Mo. 1965); State ex rel. State Highway Commission v. Vorhof-Duenke Co., 366 S.W.2d 329 (Mo.1963); Farrell v. State Highway Board, 123 Vt. 453, 194 A.2d 410 (1963); Howe v. State Highway Board, 123 Vt. 278, 187 A.2d 342 (1963); Filger v. State Highway Commission, 355 S.W.2d 425 (Mo.App. 1962); Demers v. City of Montpelier, 120 Vt. 380, 141 A.2d 676 (1958). Defendants state that the foregoing cases stand for the proposition that proximity to the interchange does not necessarily create special benefits. We agree with defendants' contention but do not agree that these cases stand for the proposition that proximity to an interchange cannot cause special benefits. In the case of Demers v. City of Montpelier, supra, there was no interchange involved but rather the lengthening of a street. The court in that case held that what we termed "the local or neighborhood benefit" in our case of Taylor v. State, supra, is not a special benefit. The conclusion of the court in Demers that it is not

a special benefit is the same as our conclusion in Taylor v. State, supra.

Filger v. State Highway Commission, supra, did not involve an interchange in the controlled access highway but rather involved an intersection of two highways which intersection had been gradually widened and improved over the years. The issue of special benefits was not at all involved, the only issue being whether the creation of traffic islands was a valid and noncompensable exercise of the police power.

In State v. Parker, supra, the landowner's property, which was already being used for business purposes, was the first unfenced property off the interchange. The expert witness testified to special benefits based on the fact that the traffic would be "funnelled" right by the property. The court held that such "funneling of traffic" would not create special benefits. In other words, the court held that a mere increase in traffic without anything else, does not create a special benefit. With this proposition we agree.

The situation in Howe v. State Highway Board, supra, is similar to the *Parker* case.

In Farrell v. State Highway Board, supra, the court said the evidence was that all landowners within one-half to three-quarters of a mile radius of the interchange enjoyed the same benefits of access to the highway. The court rightly held this to be a non-offsetable local or neighborhood benefit.

The case of State v. Vorhof-Duenke, supra, rather than supporting the position of the defendants, supports the position of the plaintiff in that it recognizes that a special benefit can result from the construction of an interchange if there is an enhancement in the value of adjacent land by making it available for newer or better uses.

Defendants' next contention is that since an interchange, as a matter of law, is an unreasonable denial of access and results in diminution of value, there cannot possibly be any special benefit resulting from proximity to an interchange. The basic premise of defendants' contention has been refuted in State ex rel. Herman v. Schaffer, 105 Ariz. 478, 467 P.2d 66 (1970), wherein the court held, in limited access situations, that owners of land do not have a right of *direct* ingress and egress to and from a controlled access thoroughfare.

■■ Defendants further contend that there cannot be any special benefit since it is conceivable that some time in the future the State might exercise its right to change the flow of traffic and divert it away from defendants' property. We find this contention to be without merit. Special benefits to be deducted from severance damages must be assessed as of the time of the taking of the property, and the mere possibility that the benefits might subsequently be terminated by the condemnor does not preclude the deduction of the benefit although it may properly be considered in determining its present value. People ex rel. Department of Public Works v. Bond, 231 Cal.App.2d 435, 41 Cal.Rptr. 900 (1964); People ex rel. Department of Public Works v. Edgar, 219 Cal.App.2d 381, 32 Cal.Rptr. 892 (1963); People v. Thomas, 108 Cal. App.2d 832, 239 P.2d 914 (1952); 13 A.L.R. 3d 1142. The fact that a property owner obtains no vested right in a benefit does not prevent such benefit from having a monetary value if it qualifies under the definition of special benefits. People v. Edgar, supra; People v. Thomas, supra, see also Los Angeles County Flood Control District v. McNulty, 59 Cal.2d 333, 29 Cal. Rptr. 13, 379 P.2d 493 (1963).

## FAILURE TO RAISE SPECIAL BENEFITS IN THE PLEADINGS OR AT PRETRIAL

Defendants contend that failure of the State to allege special benefits in its complaint precluded it from introducing evidence on the subject at the trial. Two jurisdictions, Nebraska and Texas require the condemnor to plead special benefits before it can introduce the same at trial. Tarrant County Water Control & Improvement District No. 1 v. Hubbard, 426 S.W.2d 330 (Tex.Civ.App.1968); Haley v.

State, 406 S.W.2d 477 (Tex.Civ.App.1966); Tuttle v. State, 381 S.W.2d 330 (Tex.Civ. App.1964); Frank v. State Department of Roads, 177 Neb. 488, 129 N.W.2d 522 (1964); In re Platte Valley Public Power and Irrigation District, 159 Neb. 609, 68 N.W.2d 200 (1955). Other cases hold that it is not necessary for the condemnor to allege special benefits in its complaint. State By and Through State Highway Comm. v. Bailey, 212 Or. 261, 319 P.2d 906 (1957); Smith v. City of Greenville, 229 S.C. 252, 92 S.E.2d 639 (1956); cf. Rourke v. Holmes State Railway Co., 177 S.W. 1102 (Mo.App.1915).

■ A.R.S. § 12–1117 sets forth the allegations which must be contained in the complaint in an action in eminent domain. It does not mention the necessity to allege special benefits. Neither need the condemnor under A.R.S. § 12–1117 set forth the amount of compensation to which it believes the condemnee is entitled. We agree with the statement made in Rourke v. Holmes, supra, that special benefits are an ingredient of the measure of damages in eminent domain actions and need not be pleaded.

■■ As to the failure of the State to make special benefits an issue in the pretrial order, we note that the defendants failed to object at the trial to the introduction of special benefits on this ground. Having failed to make such an objection below, the defendants are precluded from raising this point on appeal. However, for the guidance of future eminent domain cases we hold that special benefits should be designated as an issue in the pretrial order and/or stipulation in lieu of pretrial and that failure to do so may preclude the condemnor from introducing evidence on the same at trial. Since the purpose of the pretrial order is to narrow the issues in the case, the issue as to special benefits should be stated as follows or in a substantially similar manner: "Has the remainder been specially benefited and if so in what amount?"

## FOUNDATION FOR SPECIAL BENEFITS

■ The defendants first accuse the State's appraiser of chicanery, unfairness, unjustness, dishonesty and lack of candor because the appraiser found severance damages only in the sum of $1.00 and because he found special benefits in the second trial of the action without having found same in the first trial. As to the charges made by the defendants, suffice it to say that in a condemnation case, which often results in wide variances of opinion as to damages, both sides believe that the other side's appraisers are unbelievable, contemptible and corruptible harlots. Although the defendants do not appeal nor cite as error the failure of the State's appraiser to allow more than $1.00 severance damages, we will of necessity have to discuss the method used by the appraiser as far as the question of special benefits is concerned. The fact that the State's appraiser did not find special benefits at the first trial but did find same at the second trial, does not make the appraiser's testimony on special benefits inadmissible, but rather goes to the weight of his opinion.

Since the valuation of the remainder has an effect on the computation of severance damages, we need to inspect the method used by the State in arriving at its valuations. The total area before the take was 120.75 acres. In valuing the total property in the before situation, the State's appraiser testified that a strip along the north side of the property and adjacent to Highway 66, 300 feet deep by 1,980 feet in length, totaling 13.64 acres, had commercial value. He valued this at $1,000.00 per acre for a total of $13,640.00. The remaining acreage of 107.11 acres had, according to the State's appraiser, value for investment or possible home sites which he valued at $700.00 per acre or $74,977.00. Thus his total valuation of the entire property in the before situation was $88,617.00. As to the value of the part taken, the State's appraiser testified that the take included 10.48 acres of the land having a commercial potential which he valued at $1,000.00

for a total of $10,480.00, plus 2.62 acres of land having the home site or investment potential which he valued at $700.00 an acre for a total of $1,834.00. This totals $12,314.00 for the total take. The State's appraiser then testified that he felt there were severance damages in the sum of $1.00. He testified, in effect, that he allowed severance damages in the amount of $1.00 only because the Supreme Court in the orginal *Defnet* case said there had to be severance damages.

As far as special benefits were concerned, the State's appraiser testified that his feel-ing was that of the 107.65 acres which remained, 20 acres had a value of $1,500.00 per acre and the remaining acreage still retained the $700.00 per acre value for a total increase in the value of the remainder of $15,322.00.

It is clear that the State's witness again improperly computed severance damages despite the warning in the first *Defnet* case. Using the State's own figures and theory of the case, had the State's appraiser properly applied the *Defnet* test as to severance damages, the following would have resulted:

Value of Remainder Before

| | |
|---|---|
| .90 acres at $1,000.00 | $ 900.00 |
| 3.16 acres at $1,000.00 | 3,160.00 |
| 103.59 acres at $ 700.00 | 72,513.00 |
| TOTAL: | $76,573.00 |

Value of Remainder After

| | |
|---|---|
| .90 acres at $1,000.00 | $ 900.00 |
| 106.75 acres at $ 700.00 [1] | 74,725.00 |
| TOTAL: | $75,625.00 |
| Va'ue of Remainder Before | $76,573.00 |
| Value of Remainder After [2] | 75,625.00 |
| Total Severance Damages | $ 948.00 |

SPECIAL BENEFITS

| | | |
|---|---|---|
| Value of Remainder After Take and Before Improvements [3] | | $75,625.00 |
| Value of Remainder After Take and After Improvements | | |
| .90 acres at $1,000.00 | $ 900.00 | |
| 20 acres at $1,500.00 | 30,000.00 | |
| 86.75 acres at $ 700.00 | 60,725.00 | 91,625.00 |
| TOTAL SPECIAL BENEFITS: | | $16,000.00 |

As pointed out in *Defnet* and in Haney v. City of Tucson, 13 Ariz.App. 296, 475 P.2d 955 (1970), Arizona is committed to the rule that when only a part of the property is taken, the measure of severance damages is the difference between the market value of the remainder before and after the take.

It is the defendants' contention that *Defnet* mandates that the State, in computing severance damages, and more particularly the value of the remainder before the take, replace the 13.10 acres of com-mercial land included in the take by adding this 13.10 of commercial acreage back to the remainder. In other words, defendants maintain that the remainder should have been valued in the before situation, using the State's figures, as follows:

| | |
|---|---|
| .90 acres at $1,000.00 | $ 900.00 |
| 13.10 acres at $1,000.00 | 13,100.00 |
| 93.65 acres at 700.00 | 65,555.00 |
| TOTAL: | $79,555.00 |

We do not give *Defnet* the same meaning as defendants. The absurdity of defendants' contention can be mathematically

---

1. The State's theory at trial was that land in this area with no access was worth $700.00 per acre.

2. This is computed without considering the impact of special benefits.

3. Schmutz, Condemnation Appraisal Handbook, Prentice-Hall, 1963.

demonstrated. The State's valuation of the entire property in the before situation was $88,617.00. Mathematically and logically the value of the remainder before plus the value of the take should equal the value of the whole in the before situation. Under defendants' theory, if we add the take to the remainder before, the figures would be as follow:

| Take | $12,314.00 |
|------|------|
| Remainder Before | 79,555.00 |
| TOTAL: | $91,869.00 |

The value of the whole is *increased* by $3,252.00 under defendants' contention as to the meaning of *Defnet*!

■ All that *Defnet* stands for is the proposition that in valuing the remainder, it is first valued with the same highest and best use as before the take and before any improvement. After this figure is computed the appraiser computes the value of the remainder after the strip of land is taken off and after the construction of the improvements and without considering, at that time, special benefits. See Swiney v. State Highway Department, 116 Ga.App. 667, 158 S.E.2d 321 (1967); State Highway Department v. Thompson, 112 Ga.App. 488, 145 S. E.2d 784 (1965); People ex rel. Department of Public Works v. Silveira, 236 Cal.App.2d 604, 46 Cal.Rptr. 260 (1965). It is evident that had the State's appraiser properly valued the remainder before and after he would have found severance damages in the sum of $948.00. However, we perceive no prejudicial error since the jury did in fact, contrary to the first *Defnet* case, find severance damages in the sum of $14,-310.00. We further find no prejudicial error since the effect of the miscomputation on special benefits was minimal, the jury having found special benefits in the sum of $10,000.00.

Defendants further complain that the State's testimony as to special benefits, is devoid of any sales or facts to substantiate increases in value due to the construction of the improvements in the manner contemplated by the State. This contention is unsupported by the evidence. The State's appraiser testified as to his survey of properties along the interchanges throughout the State of Arizona. He testified as to the commercial development that was occurring along the interchanges in certain areas. He specifically referred to the East Kingman interchange where values increased from 400 to 500 percent in respect to properties adjacent to the interchanges. He further testified as to two after sales located near the interchange which substantiated his claim of increased value, in particular, one property sold in April of 1963 is now improved with a new American Oil station and a motel, the Ponderosa Inn. He believed that this particular sale demonstrated the fact that the interchange increased the highest and best use of the property from that of investment or home site purposes to that of commercial potential. Contrary to the contention of defendants, the appraiser did not testify that all property in a certain radius of the interchange was specially benefited. On the contrary, he testified:

" * * * Well, as a result of my studies, very exhaustive studies, I felt the property was specifically benefited. Not all of the property between all of the interchanges benefited. In fact, I doubt if the one next to it, the Smith property had any benefit at all. So it was more or less specific to this property, or a few properties, and this was illustrated in the market."

■ The defendants contend that the State's appraiser, in ascertaining the existence of special benefits, relied on some sales which, though abutting the new highway, did not abut the interchange itself. The question thus posed is this: Can special benefits accrue to those abutting the freeway itself some distance from an access or interchange point and having access to an existing road leading to the interchange? We believe the answer is in the affirmative. Allowing a special benefit in such a situation is consistent with the viewpoint we espoused in State v. Taylor, supra, to-wit: *Abutters may specially benefit, nonabutters do not*. The distance from the interchange may reduce the amount of special benefits, but does not change them from

special to general benefits. The improvement, the.freeway and its interchange are one vast, interrelated project, neither part of value without the other.

Defendants also complain that since the date of valuation was May 22, 1961, any sales after that date, even to prove the after value of the property, should not have been admitted into evidence. This contention is without merit. Even in valuing the property in the before situation, sales occurring after the date of the take can be admitted into evidence. Post taking sales are admissible to prove the after value of the remaining area. United States v. 7.14 Acres of Land, 198 F.Supp. 120 (E.D.N.Y.1961); Commonwealth v. Goehring, 408 S.W.2d 636 (Ky. 1966). Indeed, we know of no better way to show whether or not there will be severance damages or benefits than by sales of property which have been similarly affected by the improvements.

Judgment affirmed.

KRUCKER, C. J., and HATHAWAY, J., concur.

NOTE: This cause was decided by the Judges of Division Two as authorized by A.R.S. § 12–120, subsec. E.